# MT. VERNON & MARSHALL HALL STEAMBOAT COMPANY *v.* McKENNEY.

---

CARRIERS; MALICIOUS PROSECUTION; FALSE ARREST AND IMPRISONMENT; MALICE; DIRECTION OF VERDICT; PROBABLE CAUSE; WITNESSES.

1. One who purchases a ticket for an excursion on a steamboat from a party having a contract with the steamboat company for the carriage of passengers on the excursion holding tickets sold by such party, and who is received on board as a passenger, is a passenger of the company and entitled to protection as such by the company.

Note.—On liability of carrier for wrongful arrest of passenger caused by servant, see notes in 7 L.R.A. (N.S.) 162; 34 L.R.A. (N.S.) 299; L.R.A. 1915E, 320.

2. In an action against a steamboat company for malicious prosecution, false arrest, and assault of the plaintiff while a passenger, it is not error for the trial court to refuse to direct a verdict for the defendant, where the evidence shows that the plaintiff while on board as a passenger was arrested by an officer of the defendant, placed in the hold of the vessel, and afterwards turned over to a police officer, charged with disorderly conduct, and prosecuted on that charge in the police court, where he was acquitted, and where the evidence is conflicting as to whether he was maltreated on the boat by an officer of the defendant and humiliated, and as to whether he was guilty of disorderly conduct.

3. The refusal of the trial court to instruct the jury, as asked by the defendant, that there was no evidence of malice on the part of the defendant and that their verdict should be for the defendant, in an action against a steamboat company for malicious prosecution and breach of the defendant's duty as a common carrier to the plaintiff, is not error, where the evidence for the plaintiff is to the effect that although arrested while on board by an officer of the defendant for disorderly conduct he was not disorderly and did not use profane language; that he was assaulted without excuse and dragged down the stairs, imprisoned in a room in the hold of the vessel, carried to the police station, and prosecuted for using profane language; that he was discharged on the hearing; and that he had been humiliated in the presence of his neighbors and otherwise maltreated.

4. Probable cause for a criminal prosecution lies in the existence of such facts and circumstances as would create in the mind of an ordinarily cautious man, at the time, the belief that the accused was guilty of the crime charged. (Citing Mark v. Rich, 43 App. D. C. 182.)

5. In an action for malicious prosecution, where it appears that the plaintiff had been caused to be arrested by the defendant for disorderly conduct and had been tried on that charge and acquitted, it is not error for the trial court to instruct the jury that if the plaintiff at the time of his arrest was acting in a disorderly manner, and that if his conduct at the time was sufficient to cause an ordinarily prudent man to believe that he was disorderly, such fact would furnish probable cause for his arrest and prosecution. Whether or not the facts existed which furnish probable cause was for the jury to determine. (Following Spitzer v. Friedlander, 14 App. D. C. 556; Brown v. Selfridge, 34 App. D. C. 242; and Mark v. Rich, supra.)

6. In an action against a steamboat company for malicious prosecution in which the evidence shows that the plaintiff was arrested on board

a steamer by an officer of the company for disorderly conduct, it is not error for the trial court to refuse to permit a witness of the occurrence to testify for the defendant that he had communicated what he saw and heard at the time to some officer of the boat, where the witness was unable to say who the officer was, and it did not appear that it was the officer who made the complaint upon which the plaintiff was afterwards tried, or the general manager who authorized the prosecution.

No. 2962.  Submitted December 8, 1916.  Decided February 5, 1917.

HEARING on an appeal by the defendant from a judgment of the Supreme Court of the District of Columbia, on verdict, in an action for malicious prosecution, false arrest and imprisonment, and breach of defendant's duty as a common carrier to the plaintiff as a passenger.                    *Affirmed.*

The Court in the opinion stated the facts as follows:

The plaintiff, John L. McKenney, sued the defendant, Mount Vernon & Marshall Hall Steamboat Company, Limited, to recover damages for assault, false imprisonment, and malicious prosecution.  The declaration is in three counts.

The first charges malicious prosecution; the second, false arrest and imprisonment; and the third breach of duty as common carrier to plaintiff as a passenger, with his assault and false imprisonment.

The jury returned a verdict for $7,500 damages, of which $2,500 were assessed as exemplary damages.

The bill of exceptions is lengthy, and the evidence is in more or less conflict.

It appears, without contradiction, that one Goodwin had a contract with the defendant for the carriage of passengers on an excursion from Washington to Marshall Hall and return on June 25, 1914, and for a valuable consideration promised to carry passengers on tickets sold by said Goodwin on that excursion on the steamer Charles Macalester.  Plaintiff was a stenographer for the Assistant Secretary of War and purchased tickets issued through said Goodwin for the excursion aforesaid on

June 25th; he was accompanied by his wife and three sons, Ralph, age twenty, John, age nineteen, and Philip, age fourteen; they were members of a large party of men, women, and youths who lived at Takoma Park, and were members of the same church for which this excursion was gotten up; plaintiff's tickets were received by defendant, and his party entered the boat and were carried upon the trip; they returned from Marshall Hall, landing in Washington at 11:30 P. M. Plaintiff testified that on the return trip he observed signs of intoxication among some of the young men of his acquaintance; his own son Ralph was among these, and it was the first time that he had ever seen him in such state, and he was startled and shocked; plaintiff and his wife and a few other friends sat on the hurricane deck of the boat in front of the pilot house; he made his boy sit beside him where he could observe him; he remained there until the boat neared the dock. As the vessel approached the dock something went wrong with the steering gear, and the vessel backed and went forward in attempts to reach the wharf; plaintiff went to the rail to observe the approach to the dock, and while there saw his son get up and run aft; he hastened after him; some steamer chairs were strewn along on the deck, and plaintiff fell over one of them; the boy kept on, and plaintiff called to him to stop; he was immediately pounced upon by defendant's officer, Ridgely, who endeavored to throw him to the deck; he explained why he was after the boy, to see him safely home; Ridgely listened to no reason, but threw plaintiff to the deck; he was assisted by another officer and a colored member of the ship's crew; he was hustled down the steps leading to the lower deck and his eye was struck by an iron stanchion and badly bruised; the deck below was filled with people, many of them friends and acquaintances of plaintiff; the officer took him to the hold and placed him in a room there, where he remained alone. When the boat was docked at the Norfolk wharf, and the passengers got off, it moved to its own wharf. Plaintiff was taken by two officers, Ridgely one of them, into the office of the defendant; he explained the situation to the general manager, who turned plaintiff over to a metropolitan policeman

on duty at the wharf; he was taken to a police station near by; Ridgely went with them and made the complaint of disorderly conduct; plaintiff was required to deposit $5 in cash for his appearance for trial, and was then released. A rumor had been spread among the people that he was drunk, and he was very much mortified; he never drank in his life, and never had been arrested before; he appeared the next morning in the police court, where Ridgely testified; the court, after hearing the evidence, found plaintiff not guilty, and ordered his discharge and his collateral returned. He had no altercation with his son when he caused him to sit beside him; he used no profane language; he was shocked and excited when he found his son had disobeyed him, and started in pursuit of him. This testimony was corroborated by several witnesses who were in the party, one of whom testified to plaintiff being dragged across the deck by the officers and down to the lower deck in a very rough manner. Another testified that the officers called him a drunkard.

The chief witness for the defense was Officer Ridgely. He said that he was on the boat as a special officer and his duties were to keep order from top to bottom; the boat had difficulty with its steering gear in getting into the wharf; witness had just been relieved from the wheel and was idle; in about five minutes he heard unusual noises, sounding like the throwing of camp stools up against the side of the pilot house; he went right up to see what it was; observed one young man running by to the forward part of the boat; another gentleman passed by me, and his hair was straight up, his face red, and his eyes bulged out; I laid hands on him and asked, "What is the trouble?" He kept on going, and I had to hold him after that, and he said it was none of my damned business. I took hold of him with a stronger grip and told him that there was trouble in the pilot house, and we didn't care to have any excitement on board the boat. He kept on going, and I had to hold him; I said I would have to take him downstairs if he didn't come back, and asked him if he would go back and sit down. He struck me in the face; whether by accident or meaning, I don't know. I told

him he would have to go downstairs. During the scuffle there was nothing for me to do but throw him down, and I threw him down on the deck and sat on him, saying that if you are willing to go downstairs I would get up and let him walk down; sat there maybe two minutes. I got up off him and carried him to the forward of the deck and turned him over to another officer aboard the boat; did not see what became of him; we went downstairs; Officer Frank May took him downstairs as far as I saw; I next saw him when he was turned over to Officer Sweet outside of the office door; it was on the outside of the building; Officer Sweet took him to the police station; I went along with him; Officer Frank May went along; I think Officer Sweet turned plaintiff over to the officer on duty there and put charges against him of disorderly conduct, and he put up collateral and left the police station. The only remark I made at the police station was disorderly conduct, which was asked me by Officer Sweet. He asked what the charges were, and I said "disorderly conduct." Went to the police court the following day with Officer Sweet; Officer Sweet got out the information; I made no statement; I made no charge; Officer Sweet entered the charge against this man at the police court. He said he was asked to swear to something by the clerk there, but he read nothing to him. The plaintiff's counsel then read a part of an affidavit in the police court on which the information was founded, as follows: "That the defendant did use profane language and indecent and obscene words, and engage in disorderly conduct on the boat." He said he made no such charge; did not accuse plaintiff of being drunk; heard no noise or hollooing by any of the passengers about the time of this disturbance.

On cross-examination he said that plaintiff was under the influence of liquor; that he did not pounce upon him; he told May to take the plaintiff downstairs. There was then exhibited to him the affidavit in which it was stated, "Personally appeared Roy Ridgely this 26th day of June, 1914, and made oath before me that the facts set forth in the foregoing information are true, and those stated upon information received he believes to be true." Affidavit executed before one E. W. Thomas. Witness

said, "I didn't see the paper, and it wasn't read out of the paper. They asked me to swear to the information, and I swore to what Officer Sweet gave me. The officer that knows should know whether it is true or not in the paper." I had no personal feelings against the plaintiff; didn't charge him with assault; the reason I said disorderly conduct was because he was disorderly, and I put disorderly conduct against him.

Fred Meterns testified that he was general manager of the defendant, which had a contract in writing with Goodwin for the excursion. The defendant sold no tickets, but accepted those issued on the Goodwin contract; the plaintiff paid no fare to the defendant for the trip. He said: "I recall the evening that plaintiff was brought into the company's office. He did not have any conversation with me upon that occasion; he was brought in through a door in the office next to the river, the back office. I think he was brought in by Officer May, one of our special officers, and Officer Sweet, a metropolitan officer. Plaintiff did not seek to make any explanation to me. No one else was in the office that I can remember. I did not turn plaintiff over to the police; did not have anything to do with turning him over. The steamboat first landed at the Norfolk and Washington dock, then she went to her own berth, and plaintiff was taken off at the company's wharf. I had never seen or heard of the plaintiff before that night; had no feeling of malice or hatred against him at any time. The only interest I took in the case was to see Special Officer Ridgely and see that he was up there for the trial. The only statement made to me was, 'Here is a man that was disorderly on board the boat.' "

On cross-examination he testified: The captain and other employees are under my direction; Goodwin paid the company for carrying these passengers; May was an employee of the company; McKenney was kept on board and brought to my office when the boat docked at her own wharf; he said nothing to me. I think Officer May made the statement that he was disorderly on board the boat. Ridgely made his statement the next day. All the interest I took in the case was to see that Ridgely went up to the police court to the trial. I asked Ridgely did he

go up to the police court, as the only interest I took was to see that Ridgely went up there to the trial. I don't remember saying anything when the officer said here is a man arrested for being disorderly on the vessel; I might have asked what he did. I said, "What did he do?" After they told what he did I supposed there was only one thing to do, and that was to take him down to the police court. He was under arrest and that was evidently all they could do, it was evident that they would take him down there. I told them to take him to the police court, and inferred that they would take him there. Did not ask plaintiff for a statement.

Edwin P. Goodwin, for the defendant, testified to making the contract and the sale of the tickets which he furnished to the Sunday School for the excursion. When we neared Washington, the steering gear was out of order; saw the plaintiff coming upstairs; to the best of my recollection a lady was with him. He met some young man and started to chastise him and cussed him for drinking. He had quite a loud argument there, which I could not hear. I could not distinguish the words, but they were talking very loud. Finally the young man started to go away and plaintiff followed him; the next I saw of them they came back in front of the side where I was sitting, and Mr. McKenney struck this young man a blow, and apparently fell over the guy rope of the rudder. The next thing I knew of him an officer came out of the pilot house and took hold of Mr. McKenney and took him downstairs. Saw no other officer jump on the plaintiff. Witness was asked: "Did you communicate the fact of this occurrence to anybody before you left that boat?" "I did." Unable to say now to whom. I remember, going off the boat, that I spoke to some officer of the boat and said there had been a man disorderly up there.—Plaintiff moved to strike out this statement. Defendant's counsel wanted to prove that witness had told somebody on the boat there had been a man disorderly. Exception was taken by the defendant to the exclusion of this testimony.

There was other testimony offered in contradiction of the testimony of Goodwin as to the assault by plaintiff upon his son. The foregoing is the material testimony in the case.

*Mr. Henry F. Woodard, Mr. T. Morris Wampler,* and *Mr. Daniel Thew Wright* for the appellant in their brief cited:

*Ammerman* v. *Corsby,* 26 Ind. 451; *Anderson* v. *Friend,* 71 Ill. 475; *Bacon* v. *Towne,* 4 Cush. 217; *Berner* v. *Dunlap,* 94 Pa. 329; *Carter* v. *Beals,* 44 N. H. 408; *Cook* v. *Carrollton,* 92 Ga. 558; *Com.* v. *Spratt,* 14 Phila. 365; *Com.* v. *Redshaw,* 12 Pa. Co. Ct. 91; *Cohn* v. *Saidel,* 71 N. H. 565; *English* v. *Major,* 59 Hun, 317; *Fowlkes* v. *Lewis,* 10 Ala. App. 543; *French* v. *Smith,* 4 Vt. 363; *Re Begun,* 12 R. I. 309; *Re Aldermen & Justices of the Peace,* 2 Pars. Sel. Eq. Cas. 464; *Lamb* v. *Galland,* 44 Cal. 609; *L. S. & M. R. Co.* v. *Prentice,* 147 U. S. 101; *Mark* v. *Rich,* 43 App. D. C. 182; *Mt. Sterling* v. *Holly* (Ky.) 57 S. W. 491; *Matson* v. *Michael,* 81 Kan. 360; *Pennsylvania Co.* v. *Weedle,* 100 Ind. 158; *Pratt* v. *Brown,* 80 Tex. 614; *Rogers* v. *Toliver,* 139 Ga. 281; *Sheppard* v. *Jackson,* 11 Ga. App. 812; *State* v. *Shenard,* 117 N. C. 716; *State* v. *Rollins,* 55 N. H. 101; *State* v. *Perkins,* 42 N. H. 464; *Spilzer* v. *Friedlander,* 14 App. D. C. 557; *Spear* v. *Hiles,* 67 Wis. 350; *Siebert* v. *Price,* 5 Watts & S. 438; *Topeka* v. *Heilman,* 47 Kan. 739; *Washington Gaslight Co.* v. *Lansden,* 172 U. S. 534; *Watson* v. *State* (Tex.) 50 S. W. 340; 2 Rev. Stat. Supp. p. 57; D. C. Code, Secs. 608, 611, 612; 1 Wigmore, Ev. Sec. 258.

*Mr. Frank J. Hogan* and *Mr. Milton A. Kaufman* for the appellee in their brief cited:

*Abell Co.* v. *Ingham,* 43 App. D. C. 582; *Adams* v. *Washington & G. R. Co.* 9 App. D. C. 26, 9 Am. Neg. Cas. 163; *Ammerman* v. *Corsby,* 26 Ind. 451; *Anderson* v. *Friend,* 71 Ill. 475; *Ashford* v. *Evening Star Newspaper Co.* 41 App. D. C. 406; *Auerbach* v. *Freeman,* 43 App. D. C. 176; *Bacon* v. *Towne,* 4 Cush. 217; *Baltimore & P. R. Co.* v. *Galway,* 6 App. D. C. 143; *Baltimore & P. R. Co.* v. *Webster,* 6 App. D. C. 182; *Barstow* v. *Capital Traction Co.* 29 App. D. C. 371; *Bernar* v. *Dunlap,* 94 Pa. 329; *Brown* v. *Selfridge,* 224 U. S. 189, 34 App. D. C. 242; *Capital Traction Co.* v. *Morgan,* 44 App. D. C. 237;

*Carmody* v. *Capital Traction Co.* 43 App. D. C. 245; *Chesapeake Beach R. Co.* v. *Brez,* 39 App. D. C. 69; *Cohn* v. *Saidel,* 71 N. H. 564; *Cowen* v. *Winters,* 96 Fed. 929; *Crescent Live Stock Co.* v. *Butchers Union,* 120 U. S. 141; *Denver & R. G. R. Co.* v. *Harris,* 122 U. S. 597; *English* v. *Major,* 59 Hun, 317; *Fowlkes* v. *Lewis,* 10 Ala. App. 543, 65 So. 724; *French* v. *Smith,* 4 Vt. 363; *Gardiner* v. *Michigan C. R. Co.* 150 U. S. 349; *Grand Trunk R. Co.* v. *Ives,* 144 U. S. 408; *Kensington, The,* 183 U. S. 263; *Kohner* v. *Capital Traction Co.* 22 App. D. C. 181; *Lake Shore, etc. R. Co.* v. *Prentice,* 147 U. S. 101; *Lamb* v. *Galland,* 44 Cal. 609; *McDermott* v. *Severe,* 202 U. S. 600, 25 App. D. C. 276; *Mark* v. *Rich,* 43 App. D. C. 182; *Metropolitan R. Co.* v. *Hammett,* 13 App. D. C. 370; *Metropolitan R. Co.* v. *Snashall,* 3 App. D. C. 420; *Milson* v. *Gerstenberg,* 43 App. D. C. 165; *Morgan* v. *Capital Traction Co.* 44 App. D. C. 237; *Norfolk & W. S. B. Co.* v. *Davis,* 12 App. D. C. 306; *Northern P. R. Co.* v. *Everett,* 152 U. S. 107; *Pennsylvania Co.* v. *Weedle,* 100 Ind. 138; *Phila. B. & W. R. Co.* v. *Quigley,* 21 How. 202; *Pickford* v. *Hudson,* 32 App. D. C. 480; *Richmond & D. R. Co.* v. *Powers,* 149 U. S. 43; *Rogers* v. *Tolliver,* 139 Ga. 281; Court of Appeals, Rules 5, 8, Sec. 3; *Russell* v. *Washington Post Co.* 31 App. D. C. 277; *Scott* v. *Donald,* 165 U. S. 58; *Seibert* v. *Price,* 5 Watts & S. 438; *Sioux City & P. R. Co.* v. *Stout,* 17 Wall. 657; *Spear* v. *Hiles,* 67 Wis. 350; *Spitzer* v. *Friedlander,* 14 App. D. C. 556; *Sprow* v. *Staples,* 38 App. D. C. 219; *Staples* v. *Johnson,* 25 App. D. C. 155; Thomas, Prayers & Instructions, pp. 277, 278; *Traver* v. *Smolik,* 43 App. D. C. 150; *United Cigar Stores Co.* v. *Young,* 36 App. D. C. 390; *Vicksburg & M. R. Co.* v. *O'Brien,* 119 U. S. 99; *Washington Gaslight Co.* v. *Lansden,* 172 U. S. 534; *Washington Herald Co.* v. *Berry,* 41 App. D. C. 322; *Washington Post Co.* v. *O'Donnell,* 43 App. D. C. 215.

Mr. Chief Justice SHEPARD delivered the opinion of the Court:

1. It was not error to refuse defendant's request to withdraw

the third count from the jury because it does not appear from the evidence that plaintiff paid fare to the defendant as a passenger on the boat trip.

The evidence showed that defendant had contracted with one Goodwin to carry all passengers on tickets furnished by him for the excursion of June 25th to Marshall Hall. He paid the defendant for the privilege. Plaintiff purchased some of these tickets for his family and was received as a passenger on the boat. This constituted him a passenger, and entitled him to protection as such.

2. It was not error to refuse the defendant's prayer for an instruction to return a verdict for defendant on the whole testimony.

That plaintiff was a passenger was certain. There was conflict in the evidence in regard to his treatment. If he was maltreated by an officer of the defendant on the boat and humiliated, he was entitled to at least compensatory damages, and it was for the jury to determine the fact and assess the damages.

3. Defendant further assigns for error the refusal of the court to instruct the jury under the first and third counts that there was no evidence of malice on the part of the defendant, and that a verdict should be returned for defendant.

There was no error. Plaintiff testified, and was supported by other witnesses, that he was not disorderly on the occasion, and did not use profane language, and that he was assaulted without excuse, dragged down the stairs, imprisoned in a room in the hold, and then carried to the police station by order of the general manager and prosecuted for using profane language and for disorderly conduct, and that he had been discharged on hearing; that he had been humiliated in the presence of his neighbors, and otherwise maltreated.

The court could not assume as matter of law that plaintiff's conduct was such that there was probable cause for his arrest and prosecution for disorderly conduct. Whether the plaintiff had been guilty of disorderly conduct was a disputed question in the case, and was properly left to the determination of the jury.

The court instructed the jury that it was the duty of the plaintiff to conduct himself properly as a law-abiding citizen, not to engage in disorderly conduct, and not to use profane and obscene language, and that it was the duty of the company to carry him safely and. to treat him properly so long as he conducted himself properly, and not to interfere with his personal liberty. They were told to review the evidence and make up their minds as to what did happen; that until they could do that they could not apply the law to the case. · He said plaintiff claims that he was conducting himself properly in the circumstances that had arisen; that the circumstances were unusual; that his son. had obtained liquor at the bar on the boat, and had become intoxicated, and he feared he was about to go and get more liquor, or do something that he ought not to do; that he had been restraining him, in the exercise of his right and duty as a parent, by keeping him at his side, and that having left him for a moment, the young man sprang up and ran away, and that he had to act promptly; that he felt it his duty to overtake him and restrain him and was acting honestly and as a reasonable man in those circumstances. And that action was the occasion of an assault being made upon him by an officer of the boat. They were told. to review the evidence and ascertain how far the evidence tended to support the claim of the plaintiff. He then called attention to the fact that this testimony was contradicted in some particulars; and they were told to ascertain what the real facts were,—if the plaintiff exceeded the bounds of law and propriety in what he did before the officer came to him. In the circumstances in which he was placed, did he conduct himself in such a disorderly way that an officer of the boat, acting as a reasonable, cautious man in the circumstances, was· justified in believing that he was disorderly at the time, and that he required arrest or detention, at least for the time? They were told that they might not be able to determine exactly what happened, but they must determine sufficiently what the facts. were to enable them to apply the rule of law, and to say whether the officer was then acting within his rights; whether he was acting as a reasonable man,

properly regardful of the rights of the plaintiff in what he did then and there do. If he did no more than he was justified in doing, under this rule of law, then up to that point the plaintiff has failed to make out his case. If he went beyond that right and duty, which he had under the law, then so far there has been a violation of the plaintiff's right. It is claimed that in the beginning the officer only sought to detain him and used no excessive force to accomplish that end, but that then he met with resistance; that the plaintiff became profane, and it became necessary for him to use greater force. If that is true, and he used no more force than was necessary in the performance of his duty, acting reasonably in the circumstances, as they then appeared,—reasonably to him, as a man duly regardful of the rights of the plaintiff,—then the defendant is not liable for that part of his conduct. On the other hand, the plaintiff insists that it did not happen in that way at all; that when he, in his pursuit of his son, stumbled over the chairs and fell, and had risen, he was pounced upon by the officer and borne to the deck in spite of his attempt to explain the circumstances and how it happened that he was doing what he was doing, and that thereafter, without giving him a reasonable chance to explain the situation and justify his conduct, he was hustled and hurried down the companionway to the lockup, or to the room that served as the lockup for the time being.

Both parties were bound to act as reasonable men regardful of their duties respectively, which I have pointed out to you. On the one hand, it was the duty of the plaintiff to explain the situation so that the officer might not misinterpret his conduct; on the other hand, it was the duty of the officer to exercise reasonable patience and listen to his explanation, and not take it for granted that he was violating the law. Which was to blame when judged by those rules and those tests? There is a conflict in the evidence there as to what went on, but there is where the line runs. Those are the duties respectively, and you must determine the fact so far as you can, from the testimony, in order to determine whether or not there was a breach of those duties on the one hand or on the other.

There is no doubt that the officer of the company had a right, and it was his duty, acting reasonably and cautiously in the performance of it, to preserve order upon the boat; and it was the duty of the plaintiff to conduct himself peaceably and orderly. But, of course, you are to have regard for the circumstances, have regard for the circumstances in which the plaintiff was put, and also to have due regard for the circumstances as they then reasonably appeared to the officer himself. There may have been, to some extent, a misunderstanding; but who was to blame for it? Which party, if either, failed to exercise the forbearance, the reason and good judgment, the honesty of purpose that was required in the circumstances? And where was the real fault? There is no doubt that this detention was by the agents of the company, and if it was in violation of the law, as I have stated to you, then the company is responsible for it. It seems that the plaintiff was taken from the boat, and taken to the office of the defendant company, and there is a conflict as to what occurred there. The general manager was there, the one having authority over every employee upon the boat, the one having general control of the business of the company, as the evidence appears to show, and the evidence on the part of the plaintiff tends to show that he took the word of the boat's officers, and insisted on the plaintiff being taken to the police station and that the matter should be proceeded with in the court. You have heard the evidence on the part of the defendant so far as it tends to contradict or qualify that claim of the plaintiff. If what followed was done by the authority and direction of the superintendent of the defendant company, why, of course, the defendant company was responsible for that. He was in charge, and it was his duty to deal with such matters.

The Court then instructed the jury under the first and third counts with regard to the malicious prosecution. That under these counts it was necessary for the plaintiff to show that the prosecution terminated in his favor, and that has been shown. If it had not ended in his favor, he could not have maintained any action for malicious prosecution; but, on the other hand, the determination of the question of fact by the police court is not

to be treated by you as any evidence that it was properly determined. You have heard the whole case, and it is for you to try it anew as if it had not been tried in the police court, and the plaintiff is required to show that he is not guilty of the offense charged in the complaint, and that there was no reasonable or probable ground for a prosecution against him, and, furthermore, that the prosecution was instigated and prompted by malice. You are to determine whether the plaintiff was guilty or not guilty of the offense charged of disorderly conduct or of the use of profane or indecent language. If he was guilty of it, why, of course, he has no case against the defendant, but if he was not guilty of it, then the question arises, was the defendant company, through its officers, justified in its action? That is, did it have reasonable and probable cause to believe that the plaintiff was guilty?

The company, through its agents, was bound to exercise the care and prudence of reasonable men, exercising such a duty as they were attempting to exercise, and you ought to consider the circumstances exactly as they were and as they reasonably appeared to the officer at the time, and then you ought to say whether, on those facts, there was a want of probable cause. It is necessary for the plaintiff to show that there was a want of probable cause. If he has shown that he was innocent, and that there was a want of probable cause for his arrest and prosecution by the defendant, then the next question arises, whether he was prosecuted by malice. The law is that malice may be inferred from the want of probable cause if the circumstances justify it. If there was such a want of probable cause that the jury infer therefrom the reasonable existence of malice, then that point is made out. Now, what we mean by malice in this connection, is that the defendant acted not from the public and proper motives that should actuate him in making an arrest and procuring a prosecution, but from hatred, personal ill will, spite, personal anger, a wish to injure the plaintiff, or a reckless disregard of the plaintiff's rights. Either one of those things would fill the definition of malice as the law uses the term in connection with these cases.

If you find that the plaintiff was in fact innocent, and find there was no reasonable or probable grounds for the arrest and prosecution, then you are to consider all the circumstances that may tend to throw light on the question, whether the officers of the defendant company were prompted by malice against the plaintiff, by personal passion of any of the kinds I have spoken of, or reckless indifference and disregard of the rights of the plaintiff. If you find all these points in favor of the plaintiff then he is entitled to a verdict upon the first and third counts, as well as upon the second.

The court then instructed the jury that if they should find for the plaintiff he was entitled to recover fair compensation for the injuries sustained, and that they were to consider as elements of that damage any personal and physical injury that is shown to have been inflicted upon him. You are to consider all the circumstances in which the affair occurred,—the humiliation and disgrace, if you find that that existed, attendant upon the arrest and detention.

The court then further said: In cases of this character the jury have a right to go further, provided they find that the case is an outrageous one and such that an example ought to be made of the defendant in the public interest; if the conduct of the defendant, through its officers and agents in this case, ratified by the general manager of the company, was so high-handed and the offense such a reckless disregard of the rights of the plaintiff that it ought to be made an example of in the public interest, then you have a right to add to the compensatory damages a sum by way of smart money or exemplary damages; but you are not to add that unless you feel sure that the case comes within the description I have just given you, and you should be reasonable and temperate in the assessment of any damage in this case, or any other, and should be sure you are not yourselves actuated by any passion, or any hatred or prejudice, but only by your belief that the public good requires that an example should be made of the defendant.

The court also read to the jury the defendant's second instruction, which was to the effect that if the jury believe from the

evidence that the plaintiff, while a passenger on the steamboat Charles Macalester, used profane language and engaged in disorderly conduct, then they are instructed that the defendant had probable cause for charging the plaintiff in the police court of the District of Columbia, and their verdict should be for the defendant.

Prayer number 7 of defendant was also read, to the effect that in order to recover the plaintiff must establish by a preponderance of the evidence that he was not guilty of disorderly conduct or of using profane language upon the occasion complained of, and if you believe from the evidence that the conduct or language of the plaintiff was such as to create in the mind of a reasonable person the honest, reasonable, and probable belief that plaintiff was disorderly, or did use profane language, then your verdict should be for the defendant.

Also read prayer number 8 of defendant, to the effect that what is meant by probable cause is such a state of facts and circumstances as would lead a man of ordinary caution and prudence, acting conscientiously, impartially, reasonably, and without prejudice upon the facts within his knowledge, to believe that the person accused is guilty.

And also prayer number 9 of the defendant, to the effect that the question of the presence or absence of probable cause does not depend upon the guilt or innocence of the accused, or upon the fact whether or not an offense has been committed. That a person making a criminal accusation may act upon appearances, and if the apparent facts are such that a discreet and prudent person would be led to the belief that an offense had been committed by the person charged, he will be justified, although it turns out that he was mistaken and the party accused was innocent.

Defendant's tenth instruction was also read to the jury, to the effect that if you believe that the plaintiff was guilty of disorderly conduct or of using profane language that your verdict should be for the defendant, and it is not essential that you find that plaintiff was guilty of both offenses to constitute rea-

sonable and probable cause for action on the part of defendant or its servant in causing the arrest.

Also prayer number 12 of defendant was read to the jury, to the effect, the jury are instructed that persons taking passage upon a steamship submit their persons to reasonable regulation and control of the officers of the steamship.

We see no objection that can be taken to the instruction of the court on this point. Probable cause for a criminal prosecution lies in the existence of such facts and circumstances as would create in the mind of an ordinarily cautious man, at the time, the belief that the accused was guilty of the crime charged. *Mark* v. *Rich,* 43 App. D. C. 182, 189.

The jury were correctly told that if the plaintiff at the time of his arrest was acting in a disorderly manner, and that if his conduct at the time was sufficient to cause an ordinarily prudent man to believe that he was disorderly, that such fact would furnish probable cause for his arrest and prosecution. Whether or not the facts existed which furnish probable cause was for the jury to determine. The Court determined the law of the case applicable to those facts. *Spitzer* v. *Friedlander,* 14 App. D. C. 556, 562; *Brown* v. *Selfridge,* 34 App. D. C. 242, 247; *Mark* v. *Rich, supra.*

4. Another error is assigned on the exclusion of the testimony of the witness Goodwin for the defendant.

He was asked if he communicated the fact of this occurrence to anybody before he left the boat, or about the time he left the boat, and he said he did. When asked to whom he communicated it he was unable to say, did not remember; he simply remembered that on going off the boat he spoke to some officer of the boat and said that there had been a man disorderly up there. The Court excluded the testimony.

There was no error in this exclusion. As the evidence was given, it amounted to mere hearsay. If the statement had been made to the officer who made the complaint, and particularly to the general manager, who authorized the prosecution, the testimony would have been proper for the consideration of the jury in determining the question whether or not there was probable

cause for believing plaintiff had been guilty of disorderly conduct; but it does not appear to whom the statement was made, or that it had any possible consideration or effect in determining whether there was probable ground for prosecution.

We have considered all questions raised on the argument, and have discussed such as it seemed to be necessary.

We find no error in the record, and the judgment is affirmed with costs.                                                           *Affirmed.*