(76 Misc. Rep. 403.)

### In re WORK'S ESTATE.

(Surrogate's Court, New York County.  April, 1912.)

1. WILLS (§ 211*)—PROBATE—DISCOVERY OF TESTAMENTARY INSTRUMENT.

An objection for want of jurisdiction to the sufficiency of a petition for a citation to produce testamentary instrument, as authorized by Code Civ. Proc. § 2621a, as added by Laws 1910, c. 358, should as a general rule be taken by answer, unless the jurisdiction invoked is wholly statutory, in which case it may be taken orally at any stage, if entered on the record.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 518; Dec. Dig. § 211.*]

2. WILLS (§ 211*)—PROBATE—DISCOVERY OF TESTAMENTARY INSTRUMENT.

A petition under Code Civ. Proc. § 2621a, as added by Laws 1910, c. 358, for citation to produce testamentary instruments, must be taken either before a decree of probate has been entered or after the vacation of such decree.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 518; Dec. Dig. § 211.*]

3. WILLS (§ 421*)—CONCLUSIVENESS OF PROBATE.

A decree that a will of personalty be admitted to probate is one in rem, binding on all the world, and cannot be disturbed except by a direct proceeding.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 904–910; Dec. Dig. § 421.*]

In the matter of the estate of Frank Work. Petition to compel the production of alleged testamentary instruments. Petition dismissed. Order affirmed 136 N. Y. Supp. 218.

Hays, Hershfield & Wolf, for petitioner.

J. Henry Work (H. B. Closson, on the brief), for some respondents.

William M. K. Olcott, for respondent Work.

FOWLER, S. [1] On the return of a citation, issued pursuant to section 2621a, Code of Civil Procedure, as added by Laws 1910, c. 358, and heard on a petition to compel the production of alleged testamentary instruments, the persons cited appear by counsel and insist orally: First, that the petition is insufficient on its face, and that the proceedings should be dismissed; and, second, that the statute in question is unconstitutional. This position of the respondents is not a demurrer. No such pleading as a demurrrer is known to the practice in this court (Redfield's Pr. Surr. Court, § 87); the recognized pleadings in the courts of the surrogates consisting of two only, the petition and the answer or objections. Code Civ. Proc. §§ 2516, 2533, N. Y. Surr. Rule No. 14. It is apparent that the respondent's objection to this proceeding is the equivalent of an exception and that it is not a demurrer. The question is: Can it be taken orally? The pleadings in this court preserve the simplicity of the civil or canon law, of which they are even now a remote survival. The surrogate has by statute the power to require respondents on the return of a citation to state their position in writing (Code Civ. Proc. § 2533), and, where matter pleaded to a petition is in the nature of a defensive

allegation, such a direction is the proper course, one Surrogate Bradford often adopted independently of any statute, and as an incident to the general jurisdiction conferred on him. Van Vleck v. Burroughs, 6 Barb. at page 344; Carle v. Underhill, 3 Bradf. Sur. 101; Foster v. Wilber, 1 Paige, 537, 540.

But as I did not require respondents to reduce their positions to writing, the respondents' motion, taken orally, is sufficient, if entered on the record, to present their positions in this matter. If the surrogate's jurisdiction over this matter is wholly statutory, the oral objection certainly suffices. In any event, I am not inclined to insist on technical forms, or to require a written article, allegation or position in this court when objections may be just as well stated oftentimes orally. The simplicity of the procedure in this court has at all times, as I conceive, been of superior advantage to the parties. Let us examine, then, when it is more orderly that an exception to jurisdiction should be taken by answer under oath or verified in the usual way. That the present motion of respondents, whatever called, is in the nature of an exception to the surrogate's jurisdiction, is apparent.

The present jurisdiction of the surrogate, while often said to be statutory (Matter of Camp, 126 N. Y. 390, 27 N. E. 799; Matter of Runk, 200 N. Y. 447, 94 N. E. 363), is sometimes only partly dependent on statute, while at others it is wholly dependent. This is a distinction often lost sight of by those who deal with this subject. If the statute conferring jurisdiction on the surrogate refers to an established and older probate jurisdiction, which is not statutory, the surrogate's jurisdiction cannot be said to be purely statutory, and courts must take some account of this distinction. It is only when a statute is the exclusive and original source of the jurisdiction that a court is statutory in the true legal sense. The common-law jurisdiction of the Supreme Court, for example, is given primarily by the Constitution of the state; it is, in other words, organic or recognized by the fundamental law of the state. Nevertheless much of the jurisdiction itself is derivative or historical, although the immediate source is the constitution of government. Any one familiar with this topic recognizes that the jurisdiction of the fundamental common-law courts was transferred to the Supreme Court, and without that the jurisdiction of the Supreme Court would be very different from what it is. What is recognized as true in the instance of the Supreme Court, which is the great general court of original jurisdiction in this state, is equally true of the courts of the surrogates. The immediate source of the jurisdiction of the courts of the surrogates is, of course, the statutes of the state; but whenever a statute confers an historical and ready-made jurisdiction of other ages and other places, the real source of the jurisdiction is then historical, and due reference must be made to this fact or error, sometimes grave, ensues. Salmond's critical work on jurisprudence takes great note of this distinction in its compendium of legal sources, although not specially in reference to the subject of jurisdiction. But the application of the distinction concerning sources of law is apparent, in any discussion of the origins of jurisdictions.

When general probate jurisdiction is conferred on surrogates by statute, without any definition whatever of probate jurisdiction, it is necessary to have recourse to the meaning of these terms in the system of law which by constitutional reservation has been made the fundamental law of this state. By such reference it becomes apparent that the real source of the probate jurisdiction, in fact, is historical, although the real source is often treated as destitute of legal recognition because in terms it is conferred by a statute which is only the more immediate authority for the jurisdiction. One of the most important of mediums for the transfer of the common law of an older state to a newer political dependency is the translation of established jurisdictions to the officers of the new goverment. When such a jurisdiction is transferred, it carries with it a great body of applicable law. Had the original commissions to probate officers of New York expressed, for example, that they were to have the jurisdiction of the Roman prætor, instead of the jurisdiction of the delegate of the Ordinary of the Ecclesiastical Courts of England, how different would be the existing law relative to judicial powers and jurisdiction in probate proceedings.

This excursus on the origins of probate institutions is not so remote from the matter in hand as it may seem. Where a matter is clearly within the general probate jurisdiction, conferred in general terms on the surrogates, and the petition on its face shows such jurisdiction, and the surrogate has granted citation, it is very doubtful whether even since the repeal of the act of 1870 (chapter 339) an exception to the jurisdiction thereafter lies before the surrogate, unless the position alleging such want of jurisdiction is taken in writing (cf. Prout v. M'Nab, 6 Dem. Sur. 152, where the objection was taken in writing); and then the question is reviewable by appeal (Harrison v. Clark, 87 N. Y. 572, 577; Matter of Zerega, 58 Hun, 505, 507, 12 N. Y. Supp. 497). It is not singular that this course of procedure is consistent with prior procedure long established in the courts of probate. It would be singular if it was not so consistent. The present practice here is but a modification of a very ancient practice, for the probate jurisdiction conferred on surrogates is very ancient, and its practice matters rests on essentials, and is not usually dependent on purely arbitrary statutory mandates for procedure. Formerly, and at present, in matters concerning probate jurisdiction only, the judge of probate examines the petition or other pleading in the first instance, and, if he finds it sufficient, citation issues, and that ends the matter in so far as he is concerned. All pleas and defenses must then be taken by answer or written objections. But formerly a party aggrieved by a sentence or judgment of a court of first instance, proceeding according to the former course of the civil or canon law, had in all instances a right of appeal or resort to a higher tribunal for relief and protection. From the very earliest establishment of a probate jurisdiction in this state this ancient right of review or appeal has been recognized in respect of the sentence or decree of judges of probate or surrogates. Sometimes the recognition is in one form, and sometimes in another, but the right of review is always essentially

the same in substance. It is a great mistake to assume that the authors of the various statutes of this state were often lacking in coherence or in sequence or technical precision. My experience is to the contrary. The average attainment of the draftsmen of technical statutes of this state is about the same in successive generations of legislators, and in respect of surrogate laws there is nothing mysterious concerning the practice or the procedure of courts of probate which is likely to elude them, for it is the simplest of all practices.

But while some branches of the surrogate's jurisdiction are only indirectly dependent on modern statutes, a large corner of the existing jurisdiction of the surrogates, as already pointed out, is wholly statutory, and there the statute must be followed with great precision, or the proceedings, like all statutory proceedings in courts of first instance, are coram non judice. Wherever the statute, then, is the exclusive source of the surrogate's jurisdiction, it would seem that the objection to the jurisdiction may be taken orally, and at any stage of the proceeding provided such objection appear in the record. The existing proceeding under section 2621a (Code Civ. Proc.) for the production of an alleged will is prima facie statutory. But let us examine this point and ascertain how far the jurisdiction of this proceeding is statutory.

Formerly, and before the statute made and provided for production of testamentary scripts (Code Civ. Proc. § 2621a; c. 358, Laws of 1910), the surrogate, sitting as a court of probate, had an inherent power to cause the parties before it to bring all testamentary scripts into court on a probate proceeding. For example, if the executors propounded a script purporting to be a testamentary paper, which was not in fact a last will and testament, any party cited to its probate might allege a later paper and ask for the production of all other testamentary scripts in the hands or custody of such proponent, and the proponent might then discharge the monition of the court to that end by an oath to the effect that no other script, scroll, paper, or writing had come to his hands or knowledge. Langmead v. Lewis, 2 Phill. 425; Kilican v. Lord Parker, 1 Lee, 662; Feetham v. Smith (Prerog. Court Canterbury Mich. Term) Coote's Ecc. Pr. 472. That this practice was authoritative formerly in a court of probate of this state there can be no doubt. This requirement was an incident to the probate jurisdiction conferred ultimately on the surrogates. That the surrogate at the present day has an inherent jurisdiction in a probate proceeding to require the proponent or other parties cited to the probating to produce conceded scripts other than the one propounded there is as little doubt as is consistent with the absence of very late authority.

The statute under present consideration (Code Civ. Proc. § 2621a) is certainly an enlargement of such an incidental power of the surrogate in course of probate, in that the recent statute extends the jurisdiction of the surrogate to a person claiming to be interested in the estate of a decedent who is not cited on the probate proceeding, and section 2621a contemplates and provides for a new citation, directed to those who are not parties to any existing proceeding. Is this the extent of the remedial action or reform of the Legislature in enacting

section 2621a of the Code of Civil Procedure? It may be that the new section was only an enlargement of an existing power, and that such was the assumption of the makers of the statute—there are circumstances which seem to point to such a conclusion.

It will be noticed that section 2621a of the Code of Civil Procedure purports to be an amendment to an article of the existing statute relating to probate of a will and grant of letters thereupon. Its present situation on the statute book indicates some reference to the pre-existing practice and procedure in probate causes. Section 2621a is followed by a section which prescribes when probate shall not be allowed by the surrogate.

An attempt has been made to point out what inherent powers the surrogate has in probate proceedings over the production of alleged testamentary scripts not produced. It would seem that the Legislature in enacting section 2621a may be taken to have had reference to existing probate law and to the effect and power of decrees in rem throughout the civilized world. From its situation in the statute book, section 2621a of the Code of Civil Procedure must be taken to refer to proceedings in fieri, and not to proceedings after decree.

[2] If the new statute was in affirmance of an existing power of the surrogate, and merely for the purpose of extending such power to persons not parties to a probate proceeding, it would appear probable the statute did not intend to operate in a case where a decree of probate had already been made, unless such decree was first vacated or set aside. By the petition in this proceeding it is set out that the surrogate has already made a decree of probate, and that such decree is duly entered.

[3] Such a decree, or sentence (as it was with accuracy formerly termed by Surrogate Bradford and the Court of Appeals and the Court of Errors, cf. Bogardus v. Clark, 4 Paige, 626), in so far as it concerns personal property, is one in rem and is binding on all the world, including this petitioner. Bogardus v. Clark, 4 Paige, 623; Hoyt v. Jackson, 1 Dem. Sur. 553; Heyer v. Burger, 1 Hoff. Ch. 1, 11; Matter of Wood, 8 N. Y. Supp. 884[1]; Anderson v. Anderson, 112 N. Y. 104, 113, 19 N. E. 427, 2 L. R. A. 175; Matter of Kellum, 50 N. Y. 298; Vanderpoel v. Van Valkenburgh, 6 N. Y. 190, 199; Roderigas v. East R. Sav. Inst., 63 N. Y. 460, 20 Am. Rep. 555; Kelly v. West, 80 N. Y. 139, 145; Matter of Killan, 172 N. Y. 547, 564, 65 N. E. 561, 63 L. R. A. 95; Stiles v. Burch, 5 Paige, 132; Whicker v. Hume, H. L. Cas. 124; Concha v. Concha, 11 App. Cas. 541; Pinney v. Pinney, 8 B. & C. 335; Pinney v. Hunt, 6 Ch. Div. 98; Jones, Ev. §§ 609, 610. A decree of probate, being in rem, is then a very solemn and important judicial act, and subsequent rights of universal obligation depend on it. Are rights which flow from a decree in rem not to be regarded in the true construction of proceedings taken under section 2621a? I think so. Otherwise the operation of the new section may in effect be such as to deprive a decree of probate of all

---

[1] Reported in full in the New York Supplement; reported as a memorandum decision without opinion in 55 Hun, 608.

binding force and efficacy. If a proceeding under section 2621a is allowed to be taken out of the ordinary course and subsequently to a decree of probate and to re-act on it, no one will be safe, until its determination, in taking title from executors. The proceeding under section 2621a will per se act as a supersedeas and be notice that the decree in rem is impeached. Thus the whole scope and purport of a decree in rem will be defeated in the most informal way by a recourse to this new section, if allowed after decree of probate, as it vitally affects the decree of the very court which has passed such decree. Nothing more revolutionary could happen to the existing jurisdiction of the surrogates than a construction of section 2621a of the Code of Civil Procedure, which would immediately produce such a result. A decree of probate of a will of personalty would cease to be a decree in rem and binding on all the world if this application were granted at this time, and any decree would be open to attack at any time, on the most informal suggestion, such as that made here. As personal property is now conceded in the aggregate to be in excess of the value of real property, decrees of probate are of the greatest consequence, not only to the parties, but to the public at large who subsequently deal on the faith of them.

Decrees of probate, like other decrees in rem, are recognized all over the civilized world. Great faith attaches to them and justly so, as they relate to a formal investment of the title of goods and chattels of a person deceased in those thenceforth entitled to deal with the property once of the deceased. Is it possible that such important decrees shall be impeached or go for naught without any regular suppression of such decrees? The decree of probate was binding on this petitioner, whether cited or not. This is always the effect of a decree in rem.

There is committed to the surrogate by due public authority an established probate jurisdiction of great importance and indefinite antiquity. Of all the courts of this state the surrogate alone has plenary power in the first instance to determine the validity or invalidity of a will of personal property. Neither a court of law nor a court of equity has any authority to look at a will disposing of personal estate, until such will has first been admitted to probate. In this department the jurisdiction of the surrogate is exclusive (Anderson v. Anderson, 112 N. Y. 104, 113, 19 N. E. 427, 2 L. R. A. 175; Vanderpoel v. Van Valkenburg, 6 N. Y. 190, 198; Matter of Wood, 8 N. Y. Supp. 834[1]; Heyer v. Burger, 1 Hoff. Ch. 1; Stone v. Forsyth, 2 Doug. 707, cited in Catnall v. Hankey, 2 Moore P. C. 351; Allen v. McPherson, 1 Cl. & Finn. [H. L.] 207, and see 2 Lee, 541; Matter of Connell, 75 Misc. Rep. 574, 136 N. Y. Supp. 166), and the sentence of the court is binding on all other courts until regularly reversed and set aside (Herst v. Beach, 5 Madd. 351; Matter of Carter, 74 Misc. Rep. 1, 133 N. Y. Supp. 722). The rule enunciated in these cases just cited is as old as Glanville and probably older in origin. Tractatus De Legibus

---

[1] Reported in full in the New York Supplement; reported as a memorandum decision without opinion in 55 Hun, 608.

(Ed. 1607) lib. 3, c. 8. The present decree for probate, while it stands, is a sentence that there is no other last will, and it is a complete bar to this proceeding at this time under section 2621a of the Code of Civil Procedure.

It has been said that a matter which is at issue in legal proceedings cannot be set up as a bar thereto. Broom, Leg. Max. 168. But it is no violation of this canon of both logic and law, to construe section 2621a of the Code of Civil Procedure as contemplating either a vacatur of an existing decree in the first instance, or that the application shall have been made before such decree is passed and duly entered.

If any one after a decree of probate of a will of personalty and after letters testamentary have issued to executors may, on a mere informal suggestion under the new section, at any time, no matter how remote, allege another will, what have decrees of probate become worth? All decrees in rem would be prejudiced by such a construction of this statute. The qualified executors may at any time be held up at any stage of a most important negotiation, transfer, or sale, by one invoking this section, although he has no sensible knowledge or any information other than a bare suspicion of the suppression of a later testamentary script. A construction of the new section which would tolerate such an anomaly would tend to infinite mischief and be most disquieting to those who lean on our decrees of probate and letters testamentary. Such a construction of the new section, invoked in this proceeding, ought not in all events to be given in the first instance by the surrogate who passed the decree of probate.

As an important jurisdiction is committed to the surrogate's care for the moment, he should not fritter it away by such a construction of a very modern statute as may be destructive of the jurisdiction itself, for it may not have been intended by the Legislature that the new statute should have any such grave consequences. The statute may be in affirmance of an existing jurisdiction. When the surrogate is advised by the final authority of his superiors to the contrary, he will be compelled to decree accordingly. Any other construction at this time might be regarded as an offense to the law governing decrees in rem throughout the civilized world.

The real grounds of objection, taken by the respondents, have not been mentioned or passed on, because, if this opinion is right in the conclusions heretofore stated, the consideration of such objections becomes unnecessary at this stage. It must be confessed that the surrogate has some grave doubts as to the true meaning and application of the new section invoked in this proceeding. If he is found to be in error in his construction of it, it will be time enough, when so advised by the remittitur, to pass on the objections of respondents.

Section 2621a confers upon the surrogate a discretion only on the return of a citation which it is mandatory on him to issue in the first instance. In view of the considerations already offered and the decree of probate of the will of Mr. Work shown by the very petition herein, it is my opinion that such decree, being in rem, is binding on the petitioner, and that the petition at this stage is irregular.

The petition will therefore be dismissed, and it is so ordered.

Petition dismissed.