In the Matter of the Estate of MICHAEL CRONIN, Deceased.

Surrogate's Court, Westchester County, May 2, 1932.

*Meighan & Necarsulmer*, for the executrix.

*Ticknor & Ticknor*, for William Cronin, son and devisee.

SLATER, S. This matter was before the court on the petition of William Cronin to compel an accounting on March 30, 1922. An accounting was directed and on June 27, 1922, the account of proceedings was filed. William Cronin, the son and devisee, filed objections thereto, one of the objections being that " said account is erroneous in that it states that this respondent has no interest in the estate under the will of the above named decedent."

The will of Michael Cronin was admitted to probate October 7, 1920. It was executed December 23, 1919, twenty-six days before he died. He was an old man. It is not a long will and I will quote all of its provisions:

" *First.* I direct my executor named to pay all my lawful debts.

" *Second.* I give and devise to my Grandson James (son of my son James), my store building and grounds adjacent thereto, situate on the Post Road in ' Rye Neck,' Town of Rye, Village of Mamaroneck, Westchester County, New York, subject, however, to any mortgage that may be on it at the time of my death.

" *Third.* All the rest, residue and remainder of my estate, both real and personal, I give, devise and bequeath to my executor hereinafter named, in trust, however, to invest the same in the manner prescribed by law and pay the net income in equal shares to my children me surviving. This trust is to continue for a period not longer than the life of my youngest child me surviving. If, however, my youngest child does not die within the period of five years after my death, then the trust is to terminate at the end of said five years. On the expiration of the said trust my estate is to be divided into as many equal shares as there are children of mine surviving me and is to be paid over to each of said children surviving at the termination of the trust. In case any child of mine dies before the expiration of the trust the share that would go to such child is to go to any child or children of his, me sur-

viving, *per stirpes* and not *per capita.* If he leaves none, his share will fall into the remaining shares. During the period of the trust my executor and trustee may in her absolute discretion, pay over any part of the principal belonging to each share to the beneficiary thereof in addition to the said income.

"*Fourth.* I hereby nominate and appoint my daughter-in-law, Catherine A. Cronin, to be the sole executor and trustee of this my Will.

"*Fifth.* I hereby authorize and empower my executor, in her discretion, at such times and in such manner as she may deem for the best interest of my estate, to sell any or all of my real estate for the purpose of carrying out any of the provisions of this my Will, either at public or private sale.

"*Sixth.* I hereby authorize and empower my executor, in her discretion, to lease and collect the rents from, and mortgage the whole or any part of the real estate disposed of by this Will of which I may die seized either in my own absolute right, or as tenant in common with any other person or persons. I also authorize and empower my said executor to pay all mortgage interest, taxes, assessments, insurance, water charges and all other usual and necessary expenses incident to the holding of my real estate. I also authorize her to do all the acts necessary to make partition of any real estate held by me in common with any other person or persons. I further direct that the word 'executor' when and wherever used in this Will shall mean and be held to designate the person hereinabove named and appointed who shall qualify as such and her successors."

Upon the same day, apparently as an afterthought, a codicil was added to the will in the following words: " I, Michael Cronin do hereby add as a codicil to my will the following: should any person named in my will contest the same or make any claim against my estate except such as is therein created, he or she shall forfeit all right or benefit thereunder; and the share of the one taking such action shall be divided equally among the remaining beneficiaries named in said will."

It is clear that the codicil was directed at William, as the son James and his family, under the terms of the will, partook of the estate to a large degree.

The accounting executrix, in the petition, called attention to the fact that it is provided in the codicil that " should any person named in the will contest the same or make any claim against my estate," such person should forfeit all right or benefit under the said will and the share of any such person should be divided equally among the remaining beneficiaries named in said will.

It was claimed by the executrix that William Cronin, the son, contested the probate of the will.

In this shape the matter has lain dormant for ten years. Aroused from this Rip Van Winkle sleep in some manner, on December 4, 1931, the executrix filed a supplemental account of proceedings, and on December 11, 1931, William Cronin again filed similar objections to this new account of proceedings.

It is settled in this State that such conditions in wills are not against public policy. In some States it is held otherwise because of the fact that there may exist *probabilis causa litigandi*. Most of the authorities support the contention of forfeiture without recognizing any exception. Their underlying principle is that the testator may attach any condition to his gift, and, in the event the legacy is given over to another person, the restriction no longer continues as a condition *in terrorem*, but assumes the character of a conditional limitation. (*Smithsonian Institution* v. *Meech*, 169 U. S. 398, 413.)

Referring to agreements not to contest a will, made upon the receipt of advance payments, the Court of Appeals has said: " Such agreements are akin to those implied in the taking of a legacy bequeathed upon the condition stated in the will that no contest shall be made. Such provisions have been recognized as good." (*Matter of Cook*, 244 N. Y. 63, 69.)

The probate papers disclose the fact that the same firm of lawyers has been acting for the probating and accounting executrix from the start; in the probate proceeding, service of citation was perfected on William Cronin on January 28, 1920. On February 20, 1920, this son filed objections to the probate, setting forth the usual ones of invalid execution, lack of mental capacity, and undue influence, and demanding trial by jury of the issues raised. On April 9, 1920, an order was made framing the issues for a jury trial. On April 13, 1920, a notice was given that the issues would be brought to trial at the jury term to be held on May 3, 1920. The trial of the cause went over to the October jury term of 1920. On September 21, 1920, the attorney for the executor filed the issue of fact. However, before the October term of the trial of jury cases, beginning on the first Monday of October, 1920, William Cronin filed in this court, on September 29, 1920, a withdrawal of objections, viz.: " I, William Cronin, being one of the heirs-at-law of Michael Cronin, deceased, having heretofore and on or about the 20th day of February, 1920, filed objections to the Probate of the paper writing propounded as the Last Will and Testament of Michael Cronin, and demanding a trial by jury of the issues

raised by said objections, do hereby withdraw said objections and consent that said paper writing be admitted to Probate."

The paper was signed, witnessed and acknowledged.

The withdrawal of objections and consent to probate was not made because of a property settlement of any kind or character. Upon the first day of the jury term, the first Monday in October, the case was marked for "Proof before the Clerk." The probate papers indicate that the witnesses gave their testimony before the clerk of the court and the matter proceeded as an uncontested probate. On the 7th day of October, 1920, the court made its decree of probate. The decree recites the petition for probate, the citation, the supplemental citation, and that certain parties had been duly served; that William Cronin appeared by his attorney, caused objections to the probate of said will to be filed; the order directing service of the notice of probate; that issues had been duly noticed for trial, note of issue duly filed and order made framing issues and the trial of said issues had been adjourned from May 3d until the 4th day of October, 1920; further recites that " on the 29th day of September 1920, said objections having been duly withdrawn and after hearing the proofs and allegations in support of the probate of said paper writing, and due deliberation being had thereon, *the probate not having been contested,* on motion of Meighan & Necarsulmer, attorneys for Catherine A. Cronin," ordered, adjudged and decreed that said paper writing of the decedent " was duly executed and that the said testator was at the time of executing it in all respects competent to make a will and was not under restraint." Further ordered, adjudged and decreed that " said paper writing be admitted to probate."

It is the contention of the executrix that the son, William Cronin, is without right to any part of the estate because he contested the will and violated the condition. William Cronin, through his counsel, disclaims a contest, and says further that the recital in the decree of probate of non-contest, and the decree itself are *res adjudicata* upon the question.

Did the son William contest the will? What does the word " contest " mean as applied in the instant case?

The word " contest " in statutes and constitutions is a work of art and has a distinct and defined meaning. In the civil law, contest meant the statement and answer of the plaintiff and defendant, thus bringing the case before the judge, conducted usually in the presence of witnesses. (Calvinus, Lex.) This sense is retained in the canon law. (1 Kaufm. Mackeldey, C. L. 205.) A cause is said to be *contestata* when the judge begins to hear the cause after an account of the claims, given not through pleadings,

but by statement of the plaintiff and answer of the defendant. (Calvinus, Lex.)

The word " contest " is derived from two Latin words, the prefix " con " indicating together, and the noun " testor " or the verb " testo " meaning, respectively, a witness or to testify. In this sense, the word " contest " may be, and has been construed as a law suit by calling witnesses, a trial, judgment and adjudication; in short, legal opposition pressed home to a decision.

In *Killian* v. *Metropolitan Life Insurance Co.* (251 N. Y. 44, 47, 49) Judge CARDOZO wrote that the word " *contestatio* " of the Romans is " redolent of association with witnesses and writs." The definition of the word " contest " in insurance cases is not the same as is to be applied to a *testator's intention* in the use of the word " contest " when used in a will. In one case, it is contractual; in the other, it is the intention of the testator that controls. One is a rule of law, the other is the meaning of the will-maker.

It is easy for the draftsman of a will to use words that would meet an objectant at the very threshold of the probate proceeding. Testators have sought to exclude legatees from sharing an estate and have succeeded, because the forfeiture is made effective at the start of the probate proceeding, by the use of these phrases: " if any objection is filed to the probate of my will; " if my child " resists the probate " (*Donegan* v. *Wade*, 70 Ala. 501); if any one " should take any legal steps to set aside this will " (*Drennen* v. *Heard*, [Ga.] 198 Fed. 414); " if any relative contests the probate of my will, or makes any attempt to prevent the carrying out of my intentions " (*Matter of Arrowsmith*, 162 App. Div. 623; affd., 213 N. Y. 704); " if any beneficiary thereunder should directly or indirectly institute or become an acting party to any proceeding to set aside, interfere with, or make null any provision of the will " (Syllabus, *Matter of Stewart*, 5 N. Y. Supp. 32); " in case    *    *    * prevents or opposes the execution of my will    *    *    * " (*Matter of Bratt*, 10 Misc. 491); " if any legatee contests or attempts to contest the will " (*Matter of McCahan*, 221 Penn. St. 188); if an heir " goes to law to break his will " (*Bradford* v. *Bradford*, 19 Ohio, 546).

By the use of such words, the filing of objections might well violate the condition. Such words, however, do not occur in the instant case. The will-maker is bound by the mistake of his draftsman, if he intended differently.

The Surrogate's Court Act divides the probate of wills into two classes: the uncontested cases, and those where objections are filed. In the uncontested cases the court is satisfied of the material facts by the *ex parte* proof of the witnesses to the will; proof is taken,

not in open court, but before one of the clerks charged with such duty, on blank forms used for the purpose.

On such probates the surrogate must be satisfied as to the genuineness, and, if it appears to the surrogate that the will was duly executed, that the testator at the time was competent to make a will, and was not under restraint, the will must be admitted to probate. (*Matter of Davis*, 182 N. Y. 468, 474.)

On probates where objections have been filed and urged, not only the *factum* of the will is examined into upon the *trial* in *open* court, but further facts are examined into beyond the form of the proposition, *i. e.*, that the decedent well knew and understood the contents of the will, and questions of fraud, undue influence, restraint and incompetency are heard upon the trial.

In the instant case the facts were duly proven before the clerk as an uncontested probate case. The surrogate had no discretion but was required to admit the will to probate and to state in the decree, pursuant to section 144 of the Surrogate's Court Act, that the probate was not contested. The decree of probate, prepared by the attorneys for the executrix, said: " * * * *and the probate not having been contested,* on motion of Meighan & Necarsulmer, attorneys for Catherine A. Cronin, it is Ordered, Adjudged and Decreed * * *."

Nowhere in the Surrogate's Court Act is the word " contest " used. Parties are given the right to file objections. In section 19 of the Decedent Estate Law (as added by Laws of 1929, chap. 229), relating to settlements, the matter before the court is referred to as a " controversy."

It may be said that, up to the time of the withdrawal of objections, the filing of objections and the joining of issues are " minatory gestures " and the parties are " not at grips with each other " in the arena which is the court. These movements only foreshadow a contest.

" It has long been the practice of this court to permit contestants in proceedings to * * * withdraw their objections," says Surrogate THOMAS in *Matter of Evans* (33 Misc. 567), and he continues to say, " I greatly doubt that the filing of objections to the probate of a will can be treated as the assertion of an affirmative cause of action."

Proceedings in the Surrogate's Court have never been considered actions at law. The probate of a will is a special proceeding and is *in rem*. It is aimed at property, not persons. Persons are cited to appear, but the decree affects property and the rights of persons. In the probate proceeding any of the parties may contend and produce witnesses in favor of the probate and in opposition to the

probate. Witnesses may be cross-examined, not only witnesses to the will, but other witnesses may be produced and cross-examined for and against the will. (*Matter of Lasak*, 131 N. Y. 624, 626.)

The following cases in courts of sister States have had the question up on various facts, none of which are similar to those of the instant case:

In *Matter of Friend* (209 Penn. St. 442) there was a provision in the will declaring the forfeiture of a legacy *if the legatee contests* the validity of the will. But the decision went off on the question of whether or not the contest was justified under the circumstances.

In *Matter of Hite* (155 Cal. 436) the will said: " If any of my heirs or devisees, or any one else *contests* this, my last will and testament." In this proceeding *hearings were had* and finally *an agreement* was made between the parties after which the opposition was withdrawn and the will admitted to probate, without any hearing of the proposed contest. A divided court decided that the legatee had contested the will *because a consideration was paid*. In other words, she had used the machinery of the law and arrived at a settlement by its use. She accomplished her purpose. It is interesting to note that the court held that the decision of each case as it arises must be controlled by its facts. The court also said: " It does not follow herefrom that the mere filing of a paper contest, which has been abandoned without action and has not been employed to thwart the testator's expressed wishes, need be judicially declared a contest."

In *Drennen* v. *Heard* (*supra*) the decedent aimed at the wife by saying " should she take any legal steps to set aside this will." She did file a *caveat*. The court said: " The mere filing of a *caveat* * * * and the voluntary withdrawal of the same * * * would certainly not come within the meaning of the testator. * * * It was a voluntary abandonment of the endeavor."

*Moran* v. *Moran* (144 Iowa, 451) decided that the use of the words " shall not contest the same " created the forfeiture based upon the fact that, after the probate of the will, *an action was started in the District Court seeking to recover certain lands*.

In other States and in England clauses of forfeiture for will contests are inoperative where there is a *probable cause of litigation*. (*Matter of Lynn*, 31 Pittsb. L. J. [N. S.] 258; *Fifield* v. *Van Wyck*, 94 Va. 557; *Powell* v. *Morgan*, 2 Vern. 91.)

The New York cases reflecting upon the question are few in number:

*Peck* v. *Peck* (23 Hun, 312 [1881]) is a valuable case in point. A dispute arose under the provision of the statutes authorizing the surrogate to award costs or allowances in cases of a contest

of a will. Objections had been filed to the will; the attesting witnesses had been produced and cross-examined by the contestant's counsel, but, at the close of the testimony, *withdrew their objections.* Presiding Justice NOAH H. DAVIS of the First Department, writing for the court, held there had been no contest within the meaning of the statute, saying: " The words of the statute, ' in all cases of a contest,' mean something more than a mere formal appearance and filing of objections to the will. They mean an actual contest in the form of a trial upon the merits before the surrogate, and the production of evidence to sustain the objections, which puts the surrogate upon the duty of determining disputed and contested rights. Nothing of that kind existed here. Mere formal proofs were given to sustain the will, and then the contestants withdrew all objections and consented to the probate."

In *Bryant* v. *Thompson* (59 Hun, 545 [1891]) a gift was made subject to a condition not to contest the will. The recipient was an infant. The guardian filed objections and there was *a trial* before the surrogate. The court held in this case that there was a contest and that the gift failed *because of the trial,* but found another way of saving the gift to the infant.

Surrogate KETCHAM, a most learned and practical judge, in *Matter of Wall* (76 Misc. 106, 108) said: " There are decisions that the condition, though valid, is not broken by the mere maintenance of an action or proceeding against the will, if the issue is not brought to trial." The court held that the *in terrorem* clause was invalid.

In *Brown* v. *O'Barn* (120 Misc. 550, 553) Judge VAN SICLEN expressed a clear dictum on the filing of objections to a will on the facts of that case. It reflects nothing useful to either side of the instant case.

In *Matter of Arrowsmith* (162 App. Div. 623; affd., 213 N. Y. 704) the testator aimed at contesting relatives. The case turned upon the validity of the forfeiture clause.

Surrogate FOWLER in *Matter of Hock* (74 Misc. 15, 28) said: " A contested probate is a trial, nevertheless, of an issue of fact."

See case on appeal, *Hidden* v. *Raynolds,* 234 App. Div. 796, on appeal to the Court of Appeals.

I find no case holding that a legatee who files objections and, subsequently, voluntarily withdraws them loses the gift under the will because the condition was violated. Quite the contrary is true.

There are various legal significations to be accorded to the word " contest," but the basic question for determination is the meaning of the word as employed by the testator. It is the intention of the testator that controls. What did he mean by the word " contest? " The testator selected his words to attain his end not

to have the will fail.  He meant to head off a trial.  This old man had in mind, if he had anything in mind on the subject, that he wanted to preserve the will as executed.  The judicial act of probate of the will was never in doubt until the day of an actual trial before the court and jury, when the objectant, if any, had the chance to prove the will invalid.  On such day, in this case, there was no objectant, no contest, no jury.  It was an ordinary, uncontested probate.

The draftsman of the will was a learned lawyer of experience.  Had he intended to frustrate the filing of objections and make the condition operative at the outset, he would have said so by apt words.

Filed objections come " at or before the close of the testimony taken before the surrogate on behalf of the proponent, or at such subsequent time as the surrogate may direct,  *  *  *." (Surr. Ct. Act, § 147.)  Objections serve as a notice — a caveat that the legatee does not like the will.  The contest comes at the other end, when the court and jury are reached and the will is actually put in jeopardy.

I guess it was the draftsman's word, and, being so, he erred in its use, if he, the draftsman, intended a " contest " to be the objection to probate.  The mistake in the use of words and the fortunate event of the withdrawal of objections has created a division of the property as the father intended.  Justice has prevailed after the intervening years.

Michael Cronin " dipt into the future " to direct the way of his earthly possessions.  The objection of the son William, which might have matured into a contest, was stayed by the judicious advice of a learned counselor.

The will gives more to the son James and his son together than it gives to William.  Probably on account of this, as an afterthought, the codicil with its condition was made, and the provocation, because of unequal gifts to sons, resulted in the filing of objections to the probate.  Wise legal advice stopped the culmination of events from becoming a contest.  Before the legal catastrophe and loss could occur, the withdrawal of objections had taken place.  Someone is disappointed because William failed to drop into the abyss of disinheritance.

The Celtic blood coursing through the veins of the decedent would have him intend by the word " contest " a fight to the finish.  If he intended otherwise, he did not disclose it by words.  A common sense appraisal of his meaning leads to the conclusion that the old man, in the use of the word " contest," meant a trial in court upon the issues raised.

To the word " contest " in its present setting, I give the meaning of an actual trial of the issues. The filing of objections means that a contest may ensue. It is not a contest of itself.

Racing, regattas, polo, wrestling, boxing, athletics — each is a contest in the act itself. Getting ready for these events is a gesture leading up to the real event. The contest is on when the opportunity is given to the contestant to become a winner.

The acts which William Cronin did were not sufficient to constitute a " contest " according to law, or to the testator's intention.

I hold that William Cronin did not contest the will; nor did he violate the conditional limitation as to a contest. He is entitled to his share in the estate as willed to him by his father.

The executrix and all other interested persons are barred from raising the question of a contest by the son at this time and in this manner because the decree admitting the will to probate recites, or decrees, that the probate was not contested.

Section 49 of the Surrogate's Court Act refers to the pleadings in this court as " petitions, answers and objections." The court obtains jurisdiction to make a decree by section 42 of the Surrogate's Court Act.

Section 71 of the Surrogate's Court Act relates to a *trial without a jury* and says: " * * * the surrogate must file in his office his decision in writing which shall direct the decree to be entered, * * *."

Section 149 of the Surrogate's Court Act provides for a *proceeding with a jury* and directs that either the verdict of the jury, or a decision of the court shall be entered in the minutes, whereupon the surrogate shall enter a final decree accordingly. There was no occasion for a decision under either section.

" Every decree of a Surrogate's Court is conclusive as to all matters embraced therein against every person of whom jurisdiction was obtained." (Surr. Ct. Act, § 80.)

A trial brings on the questions raised on the law and the practice that can only be decided on an actual trial. (*Matter of Work*, 76 Misc. 403.) The words " contested probate " are a misnomer until a trial actually begins before the court or the court and a jury.

In the instant case the objection was withdrawn, consent to the probate given, and the bottom fell out of the controversy. The objection no longer had force, or effect. When the matter came on before the court, there was no disputant, no contestant. The method for uncontested probates was followed and, consequently, the decree very properly said, and had to decree, that the will " was not contested."

The surrogate must be satisfied in respect to all the elements

enumerated in section 144 of the Surrogate's Court Act, whether objections have been filed to the will or not. It must be shown that the paper offered as a will is proper in form as to the location and genuineness of the decedent's signature, the number of witnesses and their signatures, the circumstances under which the paper was executed, the decedent's soundness of mind, and whatever other facts the statute requires shall constitute a valid will. Section 18 of chapter 460 of the Laws of 1837, by amendment, is now known as section 144 of the Surrogate's Court Act. (*Matter of Schillinger*, 258 N. Y. 186, 188.) Formerly, only where a will had been actually contested, the fact of such contestation was stated in the record thereof. (Laws of 1877, chap. 206, § 2.)

The sentence from section 144 of the Surrogate's Court Act which says, " The decree admitting it to probate must state whether the probate was or was not contested," is mandatory. It goes to the substance of the decree. (*Matter of Hasselbrook*, 128 App. Div. 874; 1 Jessup Redf. [8th ed.] § 443.) These words, wherever placed in the decree, become a part of the decree and not alone recitals, by virtue of the words of section 144. That is the legislative direction to the court and its definition of the word " contest."

The trial with witnesses for and against the issues with an examination and cross-examination of the witnesses becomes a contested probate. A *contested* probate is a trial of an issue of fact. If the court or clerks only examine the State witnesses to the paper writing to satisfy themselves as to the genuineness of the paper writing, then it is not a *contested* probate.

What is the legal effect of recitals in a decree and of the decree itself? Recitals in a decree are the setting down, or reporting, of something done before; the narrative or matters of fact on which the transaction is founded. (53 C. J. 548.) Jurisdictional facts are established presumptively and, in the absence of fraud, conclusively by the averments in the answer, or objection. The jurisdiction is presumptively proved by a recital to that effect in the decree. The recital must be a fundamental fact; that is, a directing clause of the decree must rest on the recitals. (1 Jessup [8th ed.], §§ 207, 209.)

The decree admitting the will to probate is a judgment *in rem*. It is a judicial declaration of the State conclusive against all parties who have been cited or appear in the proceeding. " The *decree* must state whether the probate was or was not contested." This recited fact becomes a part of the decree by force of law and is conclusive. Even if it is only a recital of the fact that the will was not contested, it is conclusive. It was a matter necessarily

determined pursuant to section 144 of the Surrogate's Court Act. (*Sisco* v. *Martin*, 61 App. Div. 502.)

The instant proceeding is collateral to the probate proceeding and objections herein cannot be taken to the recitals in the decree, or to the decree upon probate. The party is confined to a motion in the original probate proceeding in order to obtain relief. (*Washbon* v. *Cope*, 144 N. Y. 287, 294.) In this case the executrix would be appealing from her own decree. A recital in the record of a court imports absolute authority and all parties thereto are estopped from denying its status. (3 Bouvier L. Dict. 2840; *Ex Parte Rice*, 102 Ala. 671.)

*Matter of Kirkholder* (171 App. Div. 153, 156) deals with the court's view of the force of recitals. It says: " The surrogate's decree denying probate to the second will does not in terms adjudge it to be a forged instrument * * *. There is a *recital* in the decree, as follows: 'And the surrogate not being satisfied of the genuineness of the instrument * * * '." At page 157: " It was on these findings of fact alone that the learned surrogate must have based his findings in this proceeding that said instrument ' was a forgery * * *.' It was not so adjudged by the decree. The decree is *res adjudicata* as to the matters therein decided, viz., that the instrument propounded is not the last will and testament of deceased and was not executed and attested in the manner prescribed by law, and is null and void as a will and is not entitled to probate. As the decree is silent as to the grounds upon which it rests except as indicated in the recital, * * *, we may look into the surrogate's findings and opinion for the actual grounds of the decision. * * * These findings are evidence of the relevant facts found. (*Gugel* v. *Hiscox*, 216 N. Y. 145.) Construing this decree in the light of the surrogate's findings and opinion, I think it appears that the question of the appellant's good faith in presenting that will [the second] for probate was involved and was decided against her, and * * * the decree and the findings and opinion on which it was based are *prima facie* evidence that appellant was guilty of forgery." The rule of *res adjudicata* stated in *Stannard* v. *Hubbell* (123 N. Y. 520) is: " Whenever the same question arises between them, in whatever form of action, and whether involved directly or collaterally, they are *forever precluded* from averring and proving the fact to be otherwise. But this, we think, is the extent of the adjudication as evidence. It is final as to the immediate purpose and object of that action and as to every fact litigated and decided therein, having such a relation to the issue that its determination was necessary to the

determination of the issue." (*Reynolds* v. *Ætna Life Ins. Co.*, 160 N. Y. 635, 651.)

Recitals in decrees of probate are in effect findings. These findings are evidence of the relative facts found. (*Gugel* v. *Hiscox*, 216 N. Y. 145.) The recital, if such, in the decree in the instant case was not a careless statement, but was one made mandatory by law to be stated as a legal conclusion.

The petitioning executrix obtained the decree and is estopped thereby from attacking it. (*Chester* v. *Buffalo Car Mfg. Co.*, 183 N. Y. 425.) This kind of conclusiveness is irrespective of any code provision. (1 Jessup Redf. [8th ed.] § 203, and cases: *O'Connor* v. *Huggins*, 113 N. Y. 511; *Lapiedra* v. *American Surety Co.*, 247 id. 25, 30.)

It is interesting to observe that the transfer tax proceeding taken April 6, 1921, is made up on the theory that William Cronin, the son, who is now sought to be excluded from receiving his patrimony, owned a one-third share of the estate, namely, $3,899.64. The exemption in his behalf was deducted.

In my judgment the recital that the will was not contested is an integral part of the decree. It is the decree, something beyond and more solemn than recitals. The parties thereto are forever precluded from averring and proving the fact to be otherwise.

Soon after the probate of the will of Michael Cronin, the son presented a note dated October 8, 1919, signed by the father, in the sum of $185. It is now claimed, for the first time, that this is in violation of the condition found in the codicil, which says: " Should any person named in my will contest the same, *or make any claim against my estate*," etc.

I do not charge the will draftsman with tautology in that the use of the words " to make any claim against my estate " is meant to be the same as a " contest " of the will. However, the draftsman of the will urges that argument at the present time. I conclude that the words " make any claim against my estate " are not used with reference to a possible contest against the will, but refer to what the testator had in mind, bringing in an invalid claim, or bill for money, against the estate. In fact, I think his words were quite clear. The draftsman aimed in two directions to circumvent a legatee, this same son, William Cronin. It was aimed at him, if he contested the will; if he made a claim for fake services against the estate. The executrix knew of the note, made two months before the will. She testified that it was in her handwriting, except, of course, the signature.

The court took evidence upon the claim and admits it as a valid claim against the estate.

The first paragraph of the will directs the executrix to pay " all my lawful debts." The word " debt " includes every claim and demand upon which a gift for a sum of money could be recovered in an action. (*Matter of Gall*, 182 N. Y. 270, 277.) The question whether a valid claim is violative of the condition which carries with it the forfeiture of the gift has been decided by this court in *Matter of Marshall* (119 Misc. 407); *Matter of Vandevort* (62 Hun, 612); *Maynard* v. *Cleveland* (76 Ga. 52, 71; 13 C. J. 110).

I hold that the making of a claim against the estate by reason of a note which the court finds valid is not violative of the condition herein.

The decedent's estate has claims against William Cronin and James Cronin, the two sons, for rent of a portion of decedent's premises.

The court finds that William Cronin owes the estate for rent of the premises at No. 107 Boston Post road, as formerly numbered, for one year and two months, at $25 per month, the sum of $350; that the estate has a valid claim against James Cronin for rent of a portion of decedent's premises, at $25 per month, for five years, or the sum of $1,500.

Submit decree in accordance with these views.