Mr. Chief Justice Maushall
 

 delivered the opinion of the Court.-*-'
 

 This suit was brought in the Circuit Court for the district of Georgia,.by. George G. Belt, the trustee for Jane Heath and her children, who are infants, and by James P. Heath, husband of the said J'ane, and father of her children, against the executors of John Pray, deceased, and Ann Pray, his widow, to.recover a legacy bequeathed to them and others, by the said John Pray-.
 

 The executors resist the demand, on the principle that the bonds for which the suit is instituted, were required to pay the debts and legacies due. from the testator, and to raise the .10,000 dollars to replace the buildings on lots 6 and 7, which were consumed by fire. They also contend, that their-testator has submitted the construction of his will, absolutely, to their judgment, and that their decision against the claim of the legatees,, is final.
 

 The Circuit Court established the claim of the plaintiffs, and decreed to them the proportion.of the .three bonds, which was estimated to be their part.
 

 From this decree, the executors have appealed to this Court.
 

 In argument, several formal objections have been taken to the decree, which will be considered. The question on the
 
 *677
 
 .merits, depends on the construction of'the will, The will is very inartificially drawn. .It is . in some parts -rendered, more confused than it would otherwise be, by a' recurrence in different places to the same subject. In item 51, he says, in the first instance, that the three bonds which are the subject of controversy, ‘‘shall be applied in aid of the- payment of.his. just debts, if any due,
 
 s
 
 .id in the payment of the legacies by him left. ” He adds, - It is my request, that my executors
 
 áojalso
 
 apply all.fund's which I may possess at my.decease,, as also dividends on all my bank stock, (except that part of dividends which I have directed tq go immediately to some of'my legatees,) and also' to apply all moneys due to me, as soon as collected, and.also all rents and crops of rice and cotton, first to pay any debts, and then legacies,” &c.
 

 The language of this part of the will, in relation to1 these bpnds, shows an intention to apply th'em to debts and.legacies, if necessary; but indicates., we think, the expectation'that it .would not be necessary.- They are-to be applied in
 
 aid
 
 of the payment of 'his just debts, and in the payment of legacies. They are-then to aid another fund. That fund .is afterwards described in terms, which show it to- be a
 
 largerone.'
 
 There is some reason to suppose,, from this. part qf the will, that the,fee. three bonds were riot comprehended, in'it, because the testator introduces the enunciation of its. items, by saying “it- is my request that my executors
 
 do'also
 
 apply all funds,. &C.” Again,-, he assigns as a reason for withholding interest from his legatees, “ that in all probability the- resources and funds of. his estate, will be equal to the payment of his debts an4 legacies, before the three bonds mentioned of John J. "Maxwell, may fall due’ and be collected.”.
 

 This-shows, unequivocally, the belief of -the . testator, that these bonds would not be required for the debts and legacies. He then adds, “in case all debts and
 
 legacies.can
 
 be paid, before the three aforesaid bonds can be collected, then, and in that casé, whatever balance may remain to be. ¡.collected» shall be equally divided, between the following persons,” &c.
 

 This bequest does not depend on the fact, that the debts and-legacies’ should be actually paid,’before these three bonds were collected, but on the sufficiency .of. the’fund .-for the objecjfc. ■ Should the fund be sufficient, its application. must be made and. whether made, in fact or not, the right, to the bonds vests in the legatees
 

 The testator then proceeds to - say; “It is my will, and I direct that all my estate, both real and personal, shall be kept and ■ continued together, until.all my just- debts and legacies are paid.”
 

 This ■ whole, item,, 51, shows the opinion, that the -profits pf .
 
 *678
 
 his estate, including dividends on his stock, added to the debt's actually due at the time, were sufficient for the payment of debts and legacies. Yet his estate is to be kept together till they shall be paid.. The profits are of course to be applied to that object. •If this fund amounted, before the 10th day of January 1820, when the first bond from J. J. Maxwell fell due, to a sufficient sum for. the payment of debts and legacies, the right of the legatees to the three bonds then'vested; — if it was not sufficient on that day, it may be doubted, whether such part of the first bond as was necessary for this primary object, might be brought to its aid immediately. We. suppose it might. A codicil to the will is dated the l-8.lh day of June 1819, and the will and codicil were proved on the 27th of the succeeding month. The executors qualified i, die month, of December'; having, ascertained, they say in their answer, the adequacy of the fund provided for debts and legacies, tiiey commenced the division of the estate.
 

 So far as the will has been considered, it is obvious that the right of the legatees, to whom the two parts of the three first bond's due from Maxwell were bequeathed, was vested. Their right to the first bond may be more questionable. If part of the fund, which was applicable in the first instance to debts and legacies, could not be made available immediately, and the first bond or any part of it.was substituted- for debts which could not be collected, it cannot be doubted that those debts, when collected, ought to replace the bond so substituted. The testimony in the cause-does not show,- with sufficient-certainty, how this fact stands. It is remarkable that this first bond was applied by the executors before the 10th of January 1820, when it became due. They staie this fact in- their answer. But we are decidedly of opinion, that this precipitate appropriation of the bond, could not affect, the rights of the. parties. They must remain, as they would have stood had the bond remained uncollected, til! it became payable.
 

 The contest in this suit would either, not- have arisen, ■ or would have been confined to the first bond, had things remained as they stood before the 10th day of January 1820. But on that day the buildings on lots Nos. 6 and
 
 7,
 
 were consumed by fire,
 

 ■ In that event, the téstator had directed that his executors áhould, fpr the purpose of replacing the buildings, hold all his estate together until they can add 10,000 dollars to what may be received pn insurance., H'e:adds, “ In case of such an accident, if necessary, in order not to delay. re-building, my executors will resort to a loan from the bank or. banks.” “.Whereas there is no ',doubt but there must bé a considerable surplus fund of my‘estate,, by debts due or crops-on hand, or near
 
 *679
 
 ■made, after my executors have paid all my debts and legacies, which my wife will come in for — if my executors discover that by such surplus that the same will not be equal to 10,000 dollars, in that case it is my. will that they continue all my estate together until they can make up 10,000 dollars.”
 

 ' Instead of conforming to this direction of the will; instead of keeping the estate together; the executors have applied the remaining two bonds payable the 10th of January 1821, and the 10th of January 1822, to this object.
 

 They say, that'having commenced the delivery of the estate, before this event took place, they thought themselves bound'to complete it; and considered themselves in the same situation as if it liad been completed before the buildings were consumed.
 

 Suppose this opinion to be correct, ought they not also to have considered the- bonds as delivered ? This also was a specific legacy; and after being vested, stands, we conceive, on equal ground with other specific legacies.
 

 These bonds do not constitute the fund on which the testator charges these 10,000 dollars, in the unlooked for event that the surplus of his estate should not .be sufficient to raise it. He does not charge this sum on the principal, but on the profits of his estate; and the wholé is to be kept together in order to raise it. It is obvious from-the whole will, that these bonds do not constitute a part of that surplus, comprehending debts; and in this particular part of it, when he speaks of debts, it is of debts due. No one of these bonds was due at the daté of the .will, or of the death of the testator,
 

 ■ It is then, we think, apparent, that the application of these bonds towards raising .the sum of 10,000 dollars, was.a misapplication of assets.
 

 If the estate had really been delivered when the event occurred, the executors ought to have retained their rights upon it, to satisfy this contingent claim, and we presume that the property would have been liable, to‘it in the hands of devisees and legatees.
 

 But the plaintiffs'in error, contend, that ■ should, they have misconstrued the will of their testator, still their misconstruction binds the legatees, because the testator s /s: “ Whereas my will is lengthy, and it is possible I may nave committed some error or errors. I therefore authorize and empower, as fully as I could do myself if living, a majority of my acting executors, my wife to have a voice as executrix, to decide in all cases, in case of any dispute or contention: whatever they determine is my intention shall he final and conclusive without any resort to a Court of Justice.”
 

 Clauses of this, description have always received such judicial
 
 *680
 
 construction, as would comport with the reasonable intention of the testator.
 

 Even when the forfeiture of the legacy, has been decfared to be the penalty of not conforming to the injunction of the Will, Courts have considered it, if the legacy be not given over; rather as- an effort to effect a desired object by intimidation, than as concluding the rights of the parties. If an unreasonable use be made, of the power, one not foreseen, and which could not'be intended by the testator, it has been considered as a casé in which- the general power of Courts of Justice to decide on the rights of-parties ought to be exercised.
 

 This principle'must Be kept in view, in construing the clause now under consideration.
 

 The acting executors, and executrix, are empowered, in all eases of dispute or contention, to determine -what is the intention of the testator; and their decision is declared'to be final.
 

 . This power is given; in the apprehension that he may have committed .error, It is tó be'exercised in order to ascertain his intent -in such' cases. It certainly does not include thepowerof. altering the will. It cannot be contended,' that this clause would protect- the executors in refusing to pay legacies altogether, or' in paying to A, á legacy bequeathed to B, or in any other ¡Siam. deviation from the will. In such casé, ,what would be the re--medy of thé injured party! Is he concluded by the decision of the executors, or may he resort to a'Court of Justice? But one answer can b.e given to these questions. So gross a departure from the manifest intent of the testator, cannot, be the result of ah. honest endeavour to find that intent; and must be considered' as a fraudulent-exercise of a power, given for'the. purpose of preserving peace, and preventing expensive and frivolous litigation.
 

 But who is to determine what is a gross ihiscpnstructioh of the will, if. the party who conceives himself injured may not submit his'case to a Court of justice? And if his case may be brought before a Court, must not that Court construe the will, rightly ?
 

 This' is not the only objection which the plaintiffs in error must encounter, in supporting their construction of this clause. The executors have not, we think, this power, unaided by the executrix.. •
 

 .It is given to a■ majority of the acting executors, “ his wife, to. have a voice as executrix.” • Her-participating in the decision, is indispensable to its validity.
 

 ‘ If this power was given to her solely, in her character as executrix, it is seriously doubted whether it can be exercised till she assumes that character.
 

 Even had she united with the executors, this would certain-
 
 *681
 
 ]y be a case which might well be considered as an exception from the general operation of the power. The bonds to which it was applied, are the bonds of one of the executors, and it was exercised by bestowing them on the executrix, instead of the persons to whom they were bequeathed by the testator-
 

 In doing this, the exécutors have plainly misconstrued the will.. The testator had not charged the 810,000, which were to be raised in order to rebuild the houses that were destroyed by fire, on these bonds, but on a different fund. It is, therefore, the very case put, of paying to the executors the legacy bequeathed to other’persons. It may also be observed, that neither of the executors, nor Mrs. Pray, say in their answer, that this diversion of these, bonds to a different purpose from that directed by the testator, was made from a belief that it was his intention, in the'event which had occurred. They refer to the clause, and rely upon it, as if it • had empowered them to do whatever they thought best,' in the progress of their administration;. instead of .doing what, in their best judgment, they believed to be his intention.
 

 But, however correctly the will of the testator may have been construed .in the Circuit Court, and we think it was construed correctly, at least so.far as respects the two last bonds mentioned in item 51.of the will of John Pray, deceased; other objections have been taken to the proceedings in the Circuit Court, which seem to be well founded.
 

 The legacy for- which this suit is instituted, is given jointly to several persons in different families. The legatees take equally, and the.numbers in neither family are ascertained by the.will. Under siich circunfistances, we’ think all the claimants ought to be brought before the Court. The rights of each individual depend upon the number who are entitled, and this number is a fact, which must be inquired into, before the amount to which any one is entitled' can be fixed. If this fact were to be examined in every case, it.would subject the executors to be harassed by a multiplicity of suits, and if it-were to be fixed by the first decree, that decree would not bind per-, sons who were not parties. The case cannot be distinguished from the rule which is applied to residuary legatees.
 

 The bilL filed in this case, does not even state the number of persons belonging to the different families, nor to that family in whose behalf this suit is brought. Nor does it assign any reason for not making the proper parties; It does not allege' that the other legatees refuse to.join, as plaintiffs, or that they fcannot be made defendants.
 

 For this cause the decree must be reversed, and the case remanded to the Circuit Court, that the plaintiffs may amend their bill..
 

 
 *682
 
 The objections to the report, are not entirely unfounded, and it is not quite satisfactory.
 

 It does not, we think, show with sufficient, clearness, whether the plaintiffs in that Court were entitled to the first bond. But as the case must go back to amend the bill, a new report will of course be made; and if that shows, that the funds of the estate were sufficient to pay the debts and legacies* without applying this bond to that purpose, the plaintiffs below will be entitled to that also.
 

 This cause came on, See., in consideration whereof, It is decreed and ordered by this Court, that the decree of the Circuit Court in this cause be, and the same is hereby reversed and annulled; and it is further ordered, that the cause be remanded to the said Circuit Court, for further proceedings to be had therein, and that the plaintiffs may am'end their bill.