United States Court of Appeals for the
District of Columbia.

Decided April 19, 1943.

Mr. Guy M. Bayes, of Washington, D. C.,
for Appellant.

Mr. G. Bowdoin Craighill, of Washington, D. C., with whom Messrs. Frederic
D. McKenney and John S. Flannery, both
of Washington, D. C., were on the brief,
for Appellees. Mr. John Dillon Fitzgerald,
of Washington, D. C., also entered appearance for Appellees.

Before PARKER, Circuit Judge, sitting
by designation, and MILLER and VINSON, Associate Justices.

PARKER, Circuit Judge.

This is an appeal by Samuel Morrison
Barry in a suit instituted by the American
Security and Trust Co., executor and trustee
under the will of Nannie Morrison, to obtain a judgment determining the rights of
devisees under that will and directing the
distribution of the estate in its hands. The
will gave to Barry a half interest in the
rentals accruing during his life time from
certain property left in trust with direction
that the income be paid to him and his
brother, or his brother's wife, during their
lives with remainder to his brother's children. It provided for forfeiture of the interest of any person contesting the provisions of the will and that the interest devised to any such person should be disposed
of under the provisions of the will as though
his name had not been mentioned therein.
Barry, his brother and his brother's wife
had filed a caveat to the will on the grounds
of lack of execution, mental incapacity,
fraud, coercion and undue influence. The
court held that their interests under the will
were forfeited by this contest, that the remainder in the property left in trust was
thereby accelerated, and that the rentals
collected therefrom by the trustee from the
death of testatrix to the date of the decree
should be paid to the residuary legatee, one
Paul W. Murphy. From this judgment
only Barry has appealed; and the only
question presented for our decision is the
correctness of the holding that Barry's
interest under the will was forfeited by his
contest.

The provisions of the will under which
Barry claims are as follows:

"Second: I give, devise and bequeath
premises 1827 Riggs Place, Northwest, in
the City of Washington, District of Columbia, unto American Security and Trust
Company, absolutely, and in fee simple, as
trustees, in and upon the following uses and
trusts: Funds derived from rent of said
premises shall be equally divided between
my Nephews, Joshua H. and Samuel M.
Barry, both of New York City, but should
he die before his brother Joshua H., the
entire proceeds as collected reverts to
Joshua H. But if said Joshua Barry is
not living at my death, his half of proceeds
shall be paid to his widow, Rose Barry and
upon the death of the aforementioned

brothers, the entire proceeds as collected be paid to Rose Barry during her natural life, and upon her death, the property is to be sold and the proceeds be equally divided between her two children Mrs. McCave (nee Rosemary Barry) and Joseph Klingle Barry, both of New York City.

"Third: I hereby request that the present agent be allowed to continue collecting the rent from the aforesaid 1827 Riggs Place, and turn over the same to my executors and trustees for distribution between the two Nephews. The agent is Mr. William E. Criser, 3108 Park Place, Washington, D. C."

Subsequent provisions of the will gave Murphy certain real and personal property and named him as residuary legatee. The anti-contest provision is contained in paragraph eleven and is as follows:

"Eleventh: In the event that any provision of this my last will and testament is contested by any of the parties mentioned herein, the portion or portions of the estate to which such party or parties would be entitled shall be disposed of in the same manner as though their name or names had not been mentioned herein."

The will was executed in November 1935. Testatrix died in June 1937. In October 1937, Barry filed a caveat to the will alleging (1) mental incapacity on the part of the testatrix, (2) failure of testatrix to declare it to be her last will and testament in the presence of the attesting witnesses, (3) failure of the attesting witnesses to sign as such at the request of testatrix and (4) fraud and coercion exercised upon testatrix by the residuary legatee Murphy. At the trial of the issues arising upon the caveat it was amended so as to add undue influence to the charges of fraud and coercion alleged to have been exercised by Murphy.

The hearing on the caveat was had in November 1938, and verdict was directed for the propounders. So far as the record before us shows, there was not a scintilla of evidence to justify the allegations of the caveat that the will was not properly executed, that the testatrix did not declare it to be her last will and testament in the presence of attesting witnesses, or that the witnesses did not sign at her request. And the same may be said of the allegations of mental incapacity, fraud and undue influence. Testatrix was shown to be a woman of advanced age, but there was no evidence of mental weakness or other mental incapacity. On the contrary, all the evidence was to the effect that she was a woman of strong will and determined character. She lived alone in the City of Washington and seldom saw her nephews or other relatives, who lived in New York. She was much attached to Murphy, an unmarried young man, who became acquainted with her in 1931 and who during the last several years of her life showed her all of the care and attention that might have been expected of a dutiful son, aiding her in her business affairs, attending to her marketing for her, seeing that she was cared for in her illness and visiting her often.

■ While there was evidence that testatrix was devoted to Murphy, was advised by him and made him presents, there is not the slightest evidence that he was guilty of any fraud upon her or in any wise controlled her action in the making of the will. On the contrary, the evidence is that she wrote out in her own handwriting the provisions she wished incorporated, using a former will as a guide, and that she consulted with a representative of the trust company with regard to the matter in Murphy's absence. It is true that she had Murphy copy her notes in the form of a will after the representative of the trust company had advised that he could not render this service, but she herself called the witnesses to the will, representatives of the trust company, and executed it at a time when Murphy was not present. There was ground for contention that Murphy cultivated the friendship of testatrix with the expectation of profit, but none that he substituted his will for hers in the disposition of her property. It is well settled that influence gained by kindness and affection will not be regarded as undue, if no imposition or fraud be practiced. MacMillan v. Knost, 75 U.S. App.D.C. 261, 126 F.2d 235, 236.

■ Under these circumstances, the court below was unquestionably correct in holding that the interest of Barry under the will was forfeited by his filing of the caveat. Under the law applicable in the District of Columbia, the forfeiture provision contained in the will was valid and the filing of the caveat worked a forfeiture of the interest of the devisee filing it, irrespective of the question of good faith or probable cause for the litigation. Smithsonian Institution v. Meech, 169 U.S. 398, 18 S.Ct. 396, 42 L.Ed. 793. But even if good

faith and probable cause could avoid the forfeiture, there is no evidence in the record before us upon which the court could base a finding of probable cause. As above indicated, we think that there was no probable cause for a contest based on the ground of undue influence; and certainly there was not a scintilla of justification for basing a contest on lack of proper execution or mental incapacity. Even if probable cause were held to exist with respect to undue influence, this would not justify a contest based on a number of other grounds for which no cause whatever existed.

The validity of provisions for forfeiture in case of contest has been denied in bequests of personalty in the absence of a gift over. Pray v. Belt, 1 Pet. 670, 7 L.Ed. 309; Whitehurst v. Gotwalt, 189 N.C. 577, 127 S.E. 582; Fifield v. Van Wyck's Ex'r, 94 Va. 557, 27 S.E. 446, 64 Am.St.Rep. 745. But see contra Bradford v. Bradford, 19 Ohio St. 546, 2 Am.Rep. 419; In re Estate of Hite, 155 Cal. 436, 101 P. 443, 21 L.R.A.,N.S. 953, 17 Ann.Cas. 993; 2 Redfield on Wills 679. This exception, even if valid, has no application here, as the devise is of an interest in realty and there is a gift over to the residuary legatee in case of breach of the condition. In some jurisdictions, it is held that a contest in good faith and upon probable cause will not work a forfeiture under such a provision.[1] What we regard as the weight

of authority, however, is to the contrary.[2] A contest on the ground of forgery or subsequent revocation neither of which is here involved, would seem to stand on a different footing from the ordinary contest based on defective execution, mental incapacity or undue influence.[3]

In the District of Columbia, the law is settled in accordance with the weight of authority, we think, by Smithsonian Institution v. Meech, supra, that a provision avoiding a disposition of property for action of the beneficiary in contesting the will is valid and will be enforced notwithstanding good faith and probable cause in making the contest. It is true that in the opinion in that case there is a quotation from Roper on Legacies in which recognition is given the doctrine that a contest based on probable cause will not work a forfeiture; but it will be noted that, in the quotation, the doctrine is expressly limited to legacies in which there is no gift over. Cooke v. Turner, 14 Sim. 493, was cited with approval, and forfeiture because of contest was enforced, although no clearer case of probable cause for contest could have been imagined than was there presented. Forfeiture of a legacy given to heirs of the wife of the testator was decreed because they had claimed as property belonging to her certain real estate which stood in her name but in which the testator had a resulting trust and which he had disposed of in

1 See In re Friend's Estate, 209 Pa. 442, 58 A. 853, 68 L.R.A. 447; South Norwalk Trust Co. v. St. John, 92 Conn. 168, 101 A. 961, Ann.Cas.1918E, 1090; In re Keenan's Will, 188 Wis. 163, 205 N.W. 1001, 42 A.L.R. '836; Tate v. Camp, 147 Tenn. 137, 245 S.W. 839, 26 A.L.R. 755; Dutterer v. Logan, 103 W. Va. 216, 137 S.E. 1, 52 A.L.R. 83; Whitehurst v. Gotwalt, 189 N.C. 577, 127 S.E. 582; Wadsworth v. Brigham, 125 Or. 428, 259 P. 299, 266 P. 875; In re Chappell's Estate, 127 Wash. 638, 221 P. 336; In re Kirkholder's Estate, 171 App.Div. 153, 157 N.Y.S. 37; First M. E. Church South v. Anderson, Tex.Civ. App., 110 S.W.2d 1177.

2 Smithsonian Institution v. Meech, 169 U.S. 398, 18 S.Ct. 396, 42 L.Ed. 793; Rogers v. Law, 1 Black 253, 17 L.Ed. 58; Cooke v. Turner, 14 Sim. 492; Evantural v. Evantural, L.R. 6 C.P. 1, 43 X.J.P.C. 58, 31 L.T.R.,N.S., 105, 23 W.R. 32; Donegan v. Wade, 70 Ala. 501; In re Estate of Hite, 155 Cal. 436, 101 P. 443, 21 L.R.A.,N.S., 953, 17 Ann. Cas. 993; In re Miller's Estate, 156 Cal.

119, 103 P. 842, 23 L.R.A.,N.S., 868; Rudd v. Searles, 262 Mass. 490, 160 N.E. 882, 58 A.L.R. 1548; Moran v. Moran, 144 Iowa 451, 123 N.W. 202, 30 L.R.A., N.S., 898; Schiffer v. Brenton, 247 Mich. 512, 226 N.W. 253; In re Chambers' Estate, 322 Mo. 1086, 18 S.W.2d 30, 67 A. L.R. 41; Rossi v. Davis, 345 Mo. 362, 133 S.W.2d 363, 125 A.L.R. 1111; Guaranty Trust Co. v. Blume, 92 N.J.Eq. 538, 114 A. 423; Kayhart v. Whitehead, 77 N. J.Eq. 12, 76 A. 241, affirmed 78 N.J.Eq. 580, 81 A. 1133; Bender v. Bateman, 33 Ohio App. 66, 168 N.E. 574; In re Cronin's Will, 143 Misc. 559, 257 N.Y.S. 496, affirmed 237 App.Div. 856, 261 N.Y. S. 936; Massie v. Massie, 54 Tex.Civ. App. 617, 118 S.W. 219; Perry v. Rogers, 52 Tex.Civ.App. 594, 114 S.W. 897; notes 125 A.L.R. 1135; 67 A.L.R. 52; 42 A.L.R. 847; 17 Ann.Cas. 997; 28 R. C.L. 315. A. L. I. Restatement of Property, Tentative Draft No. 14, Sec. 428.

3 Rouse v. Branch, 91 S.C. 111, 74 S.E. 133, 39 ·L.R.A.,N.S., 1160, Ann.Cas. 1913E, 1296; In re Bergland's Estate, 180 Cal. 629, 182 P. 277, 5 A.L.R. 1363.

his will. Not only was the title to the property held by the wife under the presumption that it was a gift from the husband although paid for by him, but this Court decided the question of law presented in favor of the heirs of the wife. Notwithstanding this, the Supreme Court held that in making claim to this property they had forfeited the right to the legacy under the condition contained in the will. In so holding, the Supreme Court stated the philosophy underlying the rule as follows [169 U.S. 398, 18 S.Ct. 402, 42 L.Ed. 793]:

"Experience has shown that often, after the death of a testator, unexpected difficulties arise; technical rules of law are found to have been trespassed upon; contests are commenced wherein not infrequently are brought to light matters of private life that ought never to be made public, and in respect to which the voice of the testator cannot be heard either in explanation or denial; and, as a result, the manifest intention of the testator is thwarted. It is not strange, in view of this, that testators have desired to secure compliance with their dispositions of property, and have sought to incorporate provisions which should operate most powerfully to accomplish that result. And, when a testator declares in his will that his several bequests are made upon the condition that the legatees acquiesce in the provisions of his will, the courts wisely hold that no legatee shall, without compliance with that condition, receive his bounty, or be put in a position to use it in the effort to thwart his expressed purposes."

We feel ourselves bound by this decision of the Supreme Court; but, even in its absence, we would follow the rule that it lays down as being supported by the weight of authority and as embodying the sounder reasoning. The view that the wishes of the testator should be disregarded with respect to the disposition of his property in the interest of greater freedom of litigation does not impress us as resting on a sound or logical basis. Studies which have been made show that only a very small percentage of will contests made on the grounds of defective execution, mental incapacity or undue influence are successful; and the public interest in freeing such contests from the restraining influence of conditions like that here involved seems of little importance compared with enforcing the will of the testator that those who share in his bounty shall not have been guilty of be-smirching his reputation or parading the family skeletons after his death. But, as stated above, even if the rule avoiding forfeiture where contest is based on probable cause were recognized here, it would not avail appellant, since there was no probable cause shown for the contest.

For the reasons stated, the judgment appealed from will be affirmed.

Affirmed.

MILLER, Associate Justice (concurring in part, dissenting in part). I concur in the result and in the conclusion that no probable cause was shown for the contest. I join also in believing that the public interest will be better served if, in cases which involve no more of merit than is revealed by the present record, those who share the bounty of the testator should be strongly deterred from "besmirching his reputation or parading the family skeletons after his death." However, I doubt the wisdom of closing the door completely to contests calculated to reveal the use of fraud, coercion and undue influence in procuring the execution of wills. It seems to me that public policy may be well served by keeping the door a little open for some extreme situations, as where one person or a group of heirs conspire to shut out another; or, perhaps, to prevent the probate of an earlier will containing a bequest for charitable purposes. The object of an *in terrorem* clause may be to protect the family reputation, but it may be to silence a legatee who, otherwise, would be a material witness.

Where a legatee or devisee is fully competent, armed with adequate legal counsel, and financially able to hazard a contest, public policy may be satisfied by the assumption that fraud or undue influence will be challenged. Under such circumstances a successful contest may break the will and cause a distribution different from the one therein directed. But, while the rule as declared by the majority opinion would, perhaps, be consistent with public policy in such a case, it will not much affect the type of case which it is supposed to affect, or restrain the person whom it purports to restrain, namely, the litigious troublemaker. He will be most apt to take his chances on a successful contest. The person who *will be* discouraged and restrained is just the person whose right, to litigate, the public policy should be most concerned to protect: poor, timid people; children, widows, in-

competents. It is against the interests of such persons that the schemer, the confidence-man and the ruthless rascal are most apt to operate. If fraud, coercion and undue influence—rarely as they now may be used in procuring the execution of wills—can be covered up and made secure by the insertion of a forfeiture condition into a will, then, far from establishing a beneficent rule of public policy, we may, instead, be putting another weapon into the hands of the racketeer.[1]

Text and other legal writers, generally, favor treating the forfeiture clause as invalid where probable cause for contest exists.[2] The history of the contrary rule and the artificial distinctions which were written into it, do not much commend it for present day uses. On the other hand, the rule of probable cause seems a safe one to apply. Probable cause is a term of well-established meaning.[3] An honest, upright person would not act upon a lesser showing of improper conduct. A lawyer would hesitate to advise a legatee to act on less, in the face of such a rule.[4] In the present case, as we have seen, it would not have availed the appellant.

If the numerical balance of decisions in other jurisdictions is in favor of the strict rule,[5] that fact is not persuasive to me. There is reason to believe that the determination of which rule should be adopted in a particular jurisdiction has been influenced by the facts of the first case which came before its courts.[6] While the facts of the present case are persuasive for adoption of the more arbitrary rule, this, in it-

---

[1] *In re* Friend's Estate, 209 Pa. 442, 58 A. 853, 854, 68 L.R.A. 447: "If, as a matter of fact, undue influence is successfully exerted over one about to execute a will, that same influence will have written into it a clause which will make sure its disposition of the alleged testator's property. * * * If the condition of forfeiture is to be enforced in every case, those who improperly influence a testator may boast to a child against whom he discriminated of the power they exerted over him, and of what they were able to accomplish for themselves, taunting and goading on such child to a contest; and yet if, in the end, those who so invited it, and whose conduct made it justifiable, succeed in sustaining the will by retracting or denying what they said, the contestant will not only be deprived of his gift or devise, but those who drew him into the contest may acquire his portion as part of their own plunder. Would any rational testator ever contemplate such a result from a forfeiting clause in his will?"

[2] 3 Page, Wills (1941) § 1306; Goddard, *Forfeiture Conditions in Wills as Penalty for Contesting Probate*, 81 U. of Pa. L.Rev. 267, 274; 1 Schouler, Wills (5th ed.) § 605; 2 Alexander, Wills (1918) 1519; Atkinson, Wills (1937) 357, 358; Keegan, 12 A.B.A.J. 236, 239; Warren, *The Progress of the Law*, 33 Harv.L.Rev. 556, 569. Note, *Validity in a Will of a Condition against Contest*. 7 Va.L.Rev. 64, 65: "At one time, the courts were under the impression that such conditions were not adverse to public policy, and that no other view should be admitted; but now, though it is still generally held that the policy of the law does not forbid such conditions, yet they are very strictly construed in favor of the contesting legatee; however, in some jurisdictions, they are considered as against public policy. When the working effect of such a condition is considered and analyzed, the last holding appears to be most sound."

Notes. *Validity of Condition for Forfeiture of Legacy on Contest of Will*, 39 Harv.L.Rev. 628, 631, *Conditions against Contest in a Will*, 23 Col.L.Rev. 169, 172.

[3] See, for example, Nelson v. International Harvester Co. of America, 117 Minn. 298, 304, 135 N.W. 808, 810; Alsop v. Lidden, 130 Ala. 548, 554, 30 So. 401, 403; cf. Mt. Vernon & M. H. S. Co. v. McKenney, 46 App.D.C. 99, 116; Herson v. United States, 65 App.D.C. 86, 87, 80 F.2d 529, 530, quoting Dumbra v. United States, 268 U.S. 435, 441, 45 S. Ct. 546, 69 L.Ed. 1032.

[4] See Dutterer v. Logan, 103 W.Va. 216, 137 S.E. 1, 52 A.L.R. 83.

[5] Dutterer v. Logan, 103 W.Va. 216, 221, 137 S.E. 1, 3, 52 A.L.R. 83: "We think there can be no doubt that the great weight of authority is against the strict enforcement of forfeitures contained in devises and bequests. On the contrary, that when there is *probabilis causa liti gandi*, such forfeitures will not be enforced, certainly not where there has [sic] been no devises or bequests over of the forfeited estate. This is in accord with the highest judicial authority of this country, Smithsonian Inst. v. Meech, supra; and is the rule in Virginia, Fifield v. Van Wyck, supra; and is the rule of sound reason, in our opinion, which we are disposed to adopt and apply in this case."

[6] Goddard, Forfeiture *Conditions in Wills as Penalty for Contesting Probate*, 81 U. of Pa.L.Rev. 267, 273.

self, should warn us against going farther than is necessary in declaring the law for the District.

The *Smithsonian* case[7] is susceptible of a different interpretation than that placed upon it by the majority opinion; in fact it has been differently interpreted.[8] So broadly interpreted, as it is in the majority opinion, it would logically require a decision against a contesting legatee, even in a case where there is probable cause to believe that the purported signature of the testator is a forgery, or that there has been a subsequent revocation. The arguments in cases cited in the majority opinion—as supporting a supposed exception upon this ground—just as logically support the right of a legatee to contest a will upon the ground of fraud or coercion or undue influence, in procuring a signature by the testator.[9] What real difference does it make whether a man cleverly imitates the signature of a testator or stands over him with a club and compels him to sign? Although the questions of forgery and revocation are not involved in the present case, they, also, suggest the danger of declaring a rule which may later become embarrassingly difficult to apply.

Under all the circumstances, I prefer to rest the decision upon the ground that there was no probable cause for contest in the present case, and to leave the larger question open for further consideration by lawyers and judges, pending a case which requires decision thereon.

---

[7] Smithsonian Institution v. Meech, 169 U.S. 398, 18 S.Ct. 396, 42 L.Ed. 793.

[8] Whitehurst v. Gotwalt, 189 N.C. 577, 580, 127 S.E. 582, 584; Dutterer v. Logan, 103 W.Va. 216, 137 S.E. 1, 52 A.L.R. 83. And *cf.* Note, *Non-contesting Clauses—Their Effect and Validity in Wills*, 87 Cent.L.J. 22, 27; Goddard, *Forfeiture Conditions in Wills as Penalty for Contesting Probate*, 81 U. of Pa.L.Rev. 267, 272; Keegan, *Provision in Will Forfeiting Share of Contesting Beneficiary*, 12 A.B.A.J. 236, 239.

[9] Rouse v. Branch, 91 S.C. 111, 118, 74 S.E. 133, 135: "No case has been cited, and we do not believe any can be found, sustaining the proposition that a devisee or legatee shall not have the right, upon probable cause, to show that a will is a forgery, without incurring the penalty of forfeiting the estate given to him by the will. The right of a contestant to institute judicial proceedings upon probable cause to ascertain whether the will was ever executed by the apparent testator is founded upon justice and morality. If a devisee should accept the fruits of the crime of forgery under the belief, and upon probable cause, that it was a forgery, he would thereby become morally a particeps criminis, and yet, if he is unwilling to commit this moral crime, be confronted with the alternative of doing so, or of taking the risk of losing all under the will, in case it should be found not to be a forgery. Public policy forbids that he should be tempted in such a manner."

The case of *In re* Bergland's Estate, 180 Cal. 629, 636, 182 P. 277, 280, 5 A. L.R. 1363, stands merely for the following proposition: "It follows that an attempt in good faith to probate a later purported will, spurious in fact, but believed to be genuine by the party seeking its probate, does not fall within the forfeiture clause under consideration here."