**James C. WILKES, Trustee under the Will of James F. Freer, Deceased, Plaintiff,**

**v.**

**Edna L. FREER et al., Defendants.**

**Civ. A. No. 2422–65.**

United States District Court
District of Columbia.

July 12, 1967.

Charles L. Wilkes, Washington, D. C., for plaintiff.

Hal Lackey, Washington, D. C., for defendant, Freer and others.

Edmund L. Browning, Jr., Asst. Corp. Counsel, for District of Columbia.

## OPINION

WILLIAM B. JONES, District Judge.

This action is brought by the plaintiff for construction of the will of James F. Freer, deceased, and for instructions to the plaintiff as to which persons are lawfully entitled to receive the trust assets now held by plaintiff as trustee under the will. A pretrial conference

was held on January 26, 1967 and the pretrial order was filed on January 30, 1967. At pretrial it was stipulated that the parties might file cross motions for summary judgment. Defendant District of Columbia filed such a motion. Defendants Edna L. Freer, H. Edward Freer, J. Richard Freer, Laird B. Freer, John W. Freer, Charles A. Freer and Mrs. Helen Olin also filed a motion for summary judgment.

The undisputed facts, as stipulated by the parties in the pretrial order, are:

James F. Freer died July 27, 1938, a resident of the District of Columbia, leaving a last will and testament dated June 26, 1937 which was admitted to probate and record on May 3, 1939, in Administration No. 53,992 in this Court. Plaintiff administered said estate as executor and his final account was approved on February 2, 1940.

Plaintiff has served as the trustee of the residuary testamentary trust created by the provisions of Article 'THIRD' of said will, in accordance with his appointment as such trustee under Article 'FIFTH' of said will. Said trust provides for the payment to a certain Mrs. Pearl A. Lewis of the sum of $50.00 per month for life and it is directed that upon her death the principal and income shall be permitted to accumulate for twenty years whereupon the trust should terminate and all principal and income be disbursed one-half to testator's brother, Harry L. Freer, if then living, and one-half to testator's brother, Clifton C. Freer (a/k/a Charles C. Freer), if then living, but that if either of said brothers should then be deceased, his one-half share should be disbursed to said brother's heirs who are then living. The said Mrs. Pearl A. Lewis died on August 25, 1944, and the 20th anniversary thereof being August 25, 1964, at which time plaintiff trustee became authorized by the will to disburse the trust principal and income.

Article 'FOURTH' of the will sets forth a so-called 'anti-contest' provision as follows:

'FOURTH: Should any beneficiary hereunder or any other party, attempt in any way to dispute, control or set aside any of the provisions of this will, or any codicil thereto, such party and his heirs shall forfeit all rights to take under the provisions of this will, and it is my will that neither such party nor his heirs shall receive any part of my estate. Should any beneficiary take excepting [sic] under the terms of this will, such party shall not serve as executor, administrator or trustee hereunder or of my estate.'

Testator was survived by three of his brothers, Harry L. Freer, Charles C. Freer, a/k/a Clifton C. Freer and George Albert Freer. Plaintiff is informed by Edna L. Freer, widow of Harry L. Freer, that the fourth brother, Robert Franklin Freer, had left the Washington, D. C. area in the year 1925 and has not been heard from since, it being unknown whether he is now living or dead, or, if dead, whether he was survived by any spouse or descendants or died testate or intestate. The aforementioned parties were testator's sole heirs at law and next of kin upon his death. The three brothers known to have survived testator were deceased on the trust distribution date (August 25, 1964) and were survived by the following known heirs at law and next of kin:

As to Harry L. Freer: Edna L. Freer, widow, H. Edward Freer, son, J. Richard Freer, son, Laird B. Freer, son, John W. Freer, son.

As to Charles C. Freer, a/k/a Clifton C. Freer: Charles A. Freer, son, Mrs. Helen Olin, daughter.

As to George Albert Freer: Albert P. Freer, son.

On November 12, 1938, George Albert Freer, Harry L. Freer and Charles C. Freer, a/k/a Clifton C. Freer, jointly filed their petition for Caveat against said will attacking the validity of said will on grounds including lack

of mental capacity, invalidity of execution and attestation, and fraud, coercion, duress and undue influence in the obtaining and the execution of said will. On May 1, 1939 the jury returned its verdict sustaining the will on all of the issues and the Court on May 3, 1939, entered its decree admitting the will to probate and record.

The only real estate acquired by the trust under said will consisted of Lot 804 in Square 920 which was improved by a brick dwelling then known as No. 6—8th Street, S. E., Washington, D. C., which property was subsequently sold by plaintiff under testamentary power of sale, the net sales proceeds being added to the personal assets of the trust, which as of the present amount to about $104,000 of personal property.

Plaintiff asserts that a forfeiture resulted upon the institution of the caveat proceedings in 1938 by Harry, Charles and George Albert Freer and that the heirs at law of Harry and Charles who are defendants here may not take under the will.[1] Defendant District of Columbia joins in that contention. The defendant heirs at law claim that the 1938 will contest did not work a forfeiture and that under the terms of the testamentary trust they are entitled to take what Harry and Charles would have taken if they had been living on August 25, 1964, the date the trustee became authorized to disburse the trust principal and income.

To support their position the defendant heirs at law cite Smithsonian Institution v. Meech, 169 U.S. 398, 18 S.Ct. 396, 42 L.Ed. 793 (1898). In that case the contesting of a provision in the testator's will resulted in a forfeiture of the legacies to the contestants with the sums bequeathed becoming a gift over to the residuary legatee Smithsonian Institution as provided by the will. But defendant heirs at law seek

support in the following quotation from 1 Roper on Legacies, 2d Am.Ed. 795; 4th Lond.Ed. as the same appears at 169 U.S. 413, 18 S.Ct. 396:

When legacies are given to persons upon conditions not to dispute the validity of, or the dispositions in wills or testaments, the conditions are not in general obligatory, but only *in terrorem*. If, therefore, there exist *probabilis causa litigandi*, the nonobservance of the conditions will not be forfeitures. Powell v. Morgan, 2 Vern. 90; Morris v. Burroughs, 1 Atk. 404; Loyd v. Spillet, 3 P.Wms. 344. The reason seems to be this: A court of equity does not consider that the testator meant such a clause to determine his bounty, if the legatee resorted to such a tribunal to ascertain doubtful rights under the will, or how far his other interests might be affected by it; but merely to guard against vexatious litigation.

But when the acquiesence of the legatee appears to be a material ingredient in the gift, which is made to determine upon his controverting the will or any of its provisions, and in either of those events the legacy is given over to another person, the restriction no longer continues a condition *in terrorem*, but assumes the character of a conditional limitation. The bequest is only quousque, the legatee shall refrain from disturbing the will; and, if he controvert it, his interest will cease and pass to the other legatee.

Defendant heirs at law argue that, since the testator James Freer made no provision for a gift over in the event his will was contested, the forfeiture clause was an *in terrorem* condition which was not obligatory and that they therefore take, as their ancestors would have taken had they lived, the principal and income of the trust.

1. On July 7, 1966, a default was entered as to defendants Albert P. Freer, Robbert Franklin Freer, and the unknown heirs at law and next of kin of Harry, Charles, George Albert, Robert and James Freer.

Defendant heirs at law cite no case where the *in terrorem* principle has been applied in the District of Columbia. On the contrary its validity has been questioned by the Court of Appeals. Barry v. American Security and Trust Co., 77 U.S.App.D.C. 351, 353, 135 F.2d 470, 472 (1943). In the latter case the Court of Appeals cited among other authorities for questioning the validity of the rule In Re Hite's Estate, 155 Cal. 436, 101 P. 443 (1909). The Supreme Court of California, in refusing to adopt the *in terrorem* doctrine for that State, stated at 101 P. 446, 447:

> It is recognized that a forfeiture of land devised will result under such circumstances, without a specific devise over. That decisions in abundance may be found holding that the same rule does not apply in cases of legacy is an anomaly of the law of wills. It rests upon no substantial distinction, and, where recognized, it is adopted in deference to the weight of earlier adjudications. It was not a part of the common law as such, but came to be recognized in England by the chancery courts to preserve uniformity, since legacies could be sued for and recovered in the ecclesiastical courts which followed the rules of the civil law. By the civil law the fiction was introduced that, unless there was a gift over of such legacy, a forfeiture would not be decreed. The provision for forfeiture would be construed as a mere threat, held in terrorem over the legatee, but not intended to deprive him of his interest. Only in the event that the will made provision for a gift over would the conclusion be adopted that the testator intended a forfeiture. For this reason, and for the added reason that it was at one time supposed that such a provision violated public policy as being 'against the liberty of the law,' this interpretation and construction found their

way into the adjudications. * * * In this state the question is res integra. We are not embarrassed in its consideration by any adjudication of our own, and are at liberty to decide in accordance with sound reason. If it be that the rule anciently rested for its support upon the doctrine of public policy, we find, even in England, where the rule prevails, that such support has been withdrawn. If it rests, as it seems to have rested in England, upon the desire of the chancery court to conform to the decisions of the ecclesiastical court, such a reason does not in this state obtain. In brief, no reason can be shown why such a rule founded neither upon public policy, nor the dictates of the common law, should by us be given recognition. The reason which may have existed in other jurisdictions does not here exist; and, in the absence of the reason, the rule itself should not be followed.

There is no more reason for recognizing the rule for the District of Columbia than there was for California.[2] A further reason for defendant heirs at law finding no assistance in the above quotation from Roper on Legacies is that the contest here by defendants' ancestors was without probable cause. Roper, as quoted in Smithsonian Institution v. Meech, 169 U.S. at 413, 18 S.Ct. at 402, states that if "there exist *probabilis causa litigandi*, the nonobservance of the conditions [no contest] will not be forfeitures." At the caveat trial of the Freer will, the Court directed verdicts against the caveators on three of the five issues: (1) The June 26, 1937 paper writing was not the last will and testament of James Freer; (2) the June 26, 1937 will was not executed and attested in due form as required by law; (3) the June 26, 1937 will was procured from the testator by fraud, coercion or duress being practiced upon him. And

---

2. For fuller treatment of the fictional nature of the *inter terrorem* doctrine see: Browder, Testamentary Conditions, 36 Mich.L.Rev. 1066, 1092–1102 (1938); Kertz, Contesting a Will in the Face of a Forfeiture Clause, 45 Geo.L.J. 200, 204–205 (1956–57).

on the remaining two issues—testamentary capacity of the testator and whether he had been unduly influenced —the jury returned verdicts against the caveators.

In Barry v. American Security and Trust Co., 77 U.S.App.D.C. 351, 135 F.2d 470 (1943), the same issues were raised by the caveat to the will. At the trial the court directed verdicts on all issues. The Court of Appeals found that there was no probable cause for the contest and it stated: "Even if probable cause were held to exist with respect to undue influence, this would not justify a contest based on a number of other grounds for which no cause whatever existed." Id. at 353, 135 F.2d at 472. And so here even if probable cause were considered to exist with respect to the testamentary capacity and undue influence issues, the contest by the testator's brothers was not justified on the three issues for which no cause existed.

But even if there were probable cause for the caveat to the Freer will it would avail the defendant heirs at law nothing. Sullivan v. Bond, 91 U.S.App.D.C. 99, 198 F.2d 529 (1952) is the most recent declaration of the rule here. There the Court of Appeals stated:

A jury found that appellee, another daughter, procured the first codicil by undue influence but did not procure the second codicil by fraud, deceit, or undue influence. The District Court duly enforced against appellant the forfeiture clause of the second codicil. We said in Barry v. American Security & Trust Co., 77 U.S.App.D.C. 351, 352, 135 F.2d 470, 471, 146 A.L.R. 1204, and we now hold, that 'Under the law applicable in the District of Columbia, the forfeiture provision contained in the will was valid and the filing of the caveat worked a forfeiture of the interest of the devisee

filing it, irrespective of the question of good faith or probable cause for the litigation.' Cf. Am.Law Institute, Restatement of the Law of Property, § 428, including Introductory Note. Id. at 100, 198 F.2d at 529.

While in Barry v. American Security and Trust Co., 77 U.S.App.D.C. 351, 135 F.2d 470 (1943), the caveator's interest which was forfeited pertained to real estate, such was not the case in Sullivan v. Bond, supra. In the latter case the caveator's forfeited interest consisted of both real and personal property.[3] In this case, James Freer's will devised and bequeathed both real and personal property to plaintiff as trustee.

The reason behind the rule that the caveat to James Freer's will worked a forfeiture here is clearly set forth in the concluding words of the majority opinion in Barry v. American Security and Trust Co., supra. At page 354 of 77 U.S.App.D.C., 135 F.2d at 473, it was said:

We feel ourselves bound by this decision of the Supreme Court [Smithsonian Institution v. Meech]; but, even in its absence, we would follow the rule that it lays down as being supported by the weight of authority and as embodying the sounder reasoning. The view that the wishes of the testator should be disregarded with respect to the disposition of his property in the interest of greater freedom of litigation does not impress us as resting on a sound or logical basis. Studies which have been made show that only a very small percentage of will contests made on the grounds of defective execution, mental incapacity or undue influence are successful; and the public interest in freeing such contests from the restraining influence of conditions like that here involved seems of little importance compared with enforcing the will of the testator

---

3. The interest the caveator would have had in the estate of her mother is not apparent from the Court of Appeals opinion. However, the inventories and accounts filed in the Estate of Rachel R. Bond, deceased, Administration No. 63,-172, show that had no contest been instituted the caveator would have benefited from both real and personal property.

that those who share in his bounty shall not have been guilty of besmirching his reputation or parading the family skeleton after his death. But, as stated above, even if the rule avoiding forfeiture where contest is based on probable cause were recognized here, it would not avail appellant, since there was no probable cause shown for the contest.[4]

■ There being no gift over nor other provision made in James Freer's will for the disposition of the forfeited interests, the testator must be held to have died intestate as to the accumulated funds now in the hands of the trustee. Such is the contention of the plaintiff trustee and defendant District of Columbia. And it is also the alternative position of the defendant heirs at law.

The situation here is not unlike that of where in the residuum of a will the legacy lapsed or became void through operation of law or otherwise without direction by testator as to its disposition. As to such lapsed or void legacy the testator was held to have died intestate as to such legacy. George Washington University v. Riggs Nat. Bank, 66 App. D.C. 389, 390, 88 F.2d 771, 772 (1936). See also In Re Fritze's Estate, 85 Cal. App. 500, 259 P. 992 (1927); La Mere v. Jackson, 288 Mich. 99, 284 N.W. 659 (1939). Here the funds now in the hands of the plaintiff trustee having been forfeited by the 1938 caveat to the will are intestate property.

Defendant District of Columbia asserts that the intestate funds belong to it by reason of escheat unless heirs at law or next of kin of James Freer are found who are not heirs or next of kin of the 1938 caveators Harry, Charles and George Albert Freer.

The District's right to take property by escheatment is derived from § 19–701, D.C.Code, 1961 (Supp. V, 1966). There it is provided:

> Where there is no surviving spouse or relations of the intestate within the fifth degree, reckoned by counting down from the common ancestor to the more remote, the surplus of real and personal property escheats to the District of Columbia to be used by the Commissioners of the District of Columbia for the benefit of the poor.

On July 27, 1938, the date of James Freer's death, there were living at least three of his brothers, Harry, Charles and George Albert. Whether a fourth brother Robert Franklin Freer was alive, or if dead, whether he was survived by

---

4. While not cited by any of the parties herein, there has come to my attention In Re: Estate of Mary Regina Doerner, deceased, 63 Washington L.Rep. 375 (1935). That was a proceeding in which a residuary legatee under the will of Mary Regina Doerner filed exceptions to the account of the administratrix c. t. a. in which he alleged among other things that the account showed payment of only $1.00 to him whereas under the will he claimed to be entitled to one-third of the estate. The administratrix moved to dismiss or overrule the exceptions asserting that one of the grounds for the motion was that the exceptant had received all he was entitled to under the will. It appeared from the record that a caveat was filed by the exceptant although never tried. The administratrix claimed that the filing of the caveat defeated the exceptant's residuary legacy and reduced his bequest to $1.00 as specified by the will, which provided that "[I]f anyone kicks they get one dollar only." Justice Cox of this Court (then designated as the Supreme Court of the District of Columbia) held that the exception to the account could not be dismissed as a matter of law and stated "since there is no gift over in the event 'anyone kicks' the presumption may be in favor of the exceptant's claim." Among the authorities cited by Justice Cox in his opinion were Pray v. Belt, 26 U.S. 670, 7 L.Ed. 309 and Smithsonian Institution v. Meech, 169 U.S. 415, 18 S. Ct. 396, 42 L.Ed. 793. The exceptant subsequently withdrew his exceptions to the account and thus the issue raised was never tried. (Administration No. 44,506.) Like the will in Sullivan v. Bond, 91 U.S. App.D.C. 99, 198 F.2d 529 (1952), the Doerner will devised real estate as well as made a bequest of personal property to the exceptant. Thus, in so far as the ruling of Justice Cox can be considered applying the *in terrorem* doctrine in the District of Columbia, it is at variance to the subsequently decided Sullivan v. Bond case.

any heir at law is uncertain. On November 12, 1938 when the caveat was filed and the forfeiture effected, there were certainly living the three caveator brothers Harry, Charles and George Albert. Their father being the common ancestor of them and testator James Freer, the caveators were within the first degree of James. Thus it would appear that the claim of the District of Columbia by escheatment is without merit. Frazier v. Kutz, 78 U.S.App.D.C. 241, 139 F.2d 380 (1943).

But the District would surmount this obstacle through the terms of James Freer's will. It points to the forfeiture clause. There it is stated "such [contesting] party and his heirs shall forfeit all rights to take under the provisions of this will, *and it is my will that neither such party nor his heirs shall receive any part of my estate*." (Emphasis supplied.) The District asserts that this clause disinherits not only the three caveator brothers but their heirs at law and next of kin, that is the defendant heirs at law and the defaulted defendant Albert P. Freer, the son of caveator George Albert Freer. To shore up its position the District in its memorandum in support of its motion for summary judgment makes the following statement: "Authorities hardly need be cited for the proposition that, with the exception of spouses, a testator may disinherit a relative, including children, brothers, nephews and nieces, and while this is generally done by a gift-over there is no reason why it cannot be done, as in the case at bar, by a positive statement * * *" such as is found in the forfeiture clause of James Freer's will.

While no District of Columbia authorities have been cited to the Court and none have been found by independent research, the majority of states that have dealt with the problem of the effect of the operation of the statutes of descent and distribution on negative disinheritance by a testator hold contrary to the position asserted here by the District

of Columbia. 4 Page on Wills § 30.17, at 115 (Bowe-Parker rev. ed. 1961) discusses the majority rule as follows:

If testator does not dispose of the whole of his estate by his last will and testament, and such will contains negative words of exclusion, the great majority of states hold that such negative words cannot prevent property from passing under the statutes of descent and distribution. This question comes up, as a rule, when testator provides specifically in his will that certain heirs who are named or otherwise indicated shall not receive any part of his estate. If his will disposes of part of his property, but not all, such provision is without effect as to the property of which he makes no disposition by his will.

The Illinois Supreme Court in following the majority rule in Tea v. Millen, 257 Ill. 624, 101 N.E. 209, 211 (1913), stated:

It has been settled by several decisions of this court that heirs cannot be disinherited merely by a declaration that they shall not have anything or no more than a certain sum. No matter how strong the intention of the testator may be to disinherit an heir, the intention cannot be given any effect as to intestate property, and the only method of disinheriting him is to give the property to some one else.

"A testator must do more than merely evince an intention to disinherit before the heir's right of succession can be cut off—he must make a valid disposition of his property" declared a Court of Appeals of California. In Re Fritze's Estate, 85 Cal.App. 500, 259 P. 992, 994 (1927).

█ Applying the majority rule in the District of Columbia, James Freer's effort to disinherit his caveator brothers and their heirs at law was ineffective. He made no gift over of the forfeited estate. He provided no other disposition of that property. Those whom he determined to defeat of their inheritance will

take a part of it at least under the statute of descent and distribution of intestate property. The District of Columbia will receive nothing through escheatment.

Holding as I have that the forfeited property will descend to the heirs at law and next of kin, there remains the question of the amount and the identity of those to whom this property should be transferred. The plaintiff trustee has proposed as the proper distribution the following:

¼ to the Estate of Harry L. Freer, deceased

¼ to the Estate of Charles C. Freer, a/k/a Clifton C. Freer, deceased

¼ to the Estate of George Albert Freer, deceased

¼ to the Registry of this Court for distribution to Robert Franklin Freer, if living, or if deceased for distribution to his estate if he was living on November 12, 1938, (date of filing of caveat), or if he was then deceased, for distribution to his descendants who were living on said date, per stirpes, and to the estate of any such descendant who has died since said date. If on said date neither Robert Franklin Freer nor any descendant of his was living, then said share would be distributed ⅓ to each of the estates of Harry, Charles and George Albert Freer.

Since at the present time it is not known if Robert Franklin Freer is alive, or, if dead, whether he was alive on November 12, 1938, or if deceased whether he left any descendants, the plaintiff's suggestion for proper distribution is meritorious and I adopt it. An order will be entered to that effect.

In conclusion, defendant District of Columbia's motion for summary judgment is denied. Defendant heirs at law motion for summary judgment is granted in so far as it seeks a judgment that the forfeited funds in the hands of the plaintiff trustee are intestate property to be distributed as above provided.